Higgins, *et al.*, *vs.* Carlton and Scaggs.

(Decided 3d February, 1868.)

---

JOSHUA C. HIGGINS, and others, *vs.* HENRY L. CARLTON and JOHN B. SCAGGS.

*Evidence — Practice — Instructions — Credible Witnesses—Attestation of Will—Testamentary Capacity — Presumption of Sanity — Onus Probandi — Undue Influence—Execution of Wills—What will not avoid a Will.*

The fact that illegal testimony has been permitted to go to the jury, without objection, cannot be urged as a ground for allowing other testimony, inadmissible under the rules of evidence, to be given when objection is made.

Higgins, *et al.*, *vs.* Carlton and Scaggs.

A subscribing witness to a will, having testified that he drew the will from a memorandum placed in his hands by the wife of the testator, at the suggestion of the testator, he having applied to her for it, was asked upon cross-examination to produce the memorandum referred to, which he did, and stated that there was a difference between the residuary clause in the will and memorandum, and that in writing the will he did not pursue the memorandum exclusively; he was then asked "if the memorandum differed from the will in any other respects?" HELD:

That the question was improper, as it could not have been answered, without a violation of the well established rule, that the contents of a written instrument, if it be in existence, must be proved by the instrument itself, and not by parol evidence.

The same witness being asked "why he made in the will the change from the memorandum, in reference to the devise of the land to Mrs. Ferrall," was proceeding to give his reasons for doing so, when the party asking the question, objected. HELD:

That the reasons for making the alteration, being responsive to the question, were admissible.

A judgment will not be reversed, where it appears from the record that the appellants have not been injured by the rulings of the Court below, although such rulings may be erroneous.

The opinion of a witness, as to the "physical capacity" of a testator to hold conversations testified to by another witness, as having taken place at a time when the witness, whose opinion is asked, was not present, is not legal testimony.

Where the object is to lay a proper foundation to discredit a witness by proof of anything he may have said, it is not sufficient to direct his attention to dates, names and other attendant circumstances; he must also be asked, "whether or no he has said or declared that which is intended to be proved?"

B., a witness on the part of the caveatees, having stated upon cross-examination, that he predicated his opinion of the testator's capacity to execute a valid deed or contract, upon what he saw or knew of him, and in part upon the evidence of the witness S.; the latter was asked if he had stated in said evidence that the testator was irrational and wandering in his conversations, or otherwise? HELD:

That the question was improper.

While it may be proper, as a general rule, to grant or refuse prayers in the terms in which they are presented, the Court may reject them all

Higgins, *et al.*, *vs.* Carlton and Scaggs.

and instruct the jury in their own words, or grant the prayers with such explanations or qualifications as may be necessary to a proper understanding of the case.

The phrase "credible witness," as applied to one who attests a will, means a "witness competent at the time of attestation."

An instruction by the Court shall not be reversed, because a question of law has been thereby submitted to the jury, unless it appears affirmatively, from the record that objection was taken thereto, at the trial.

The testamentary law of this State, does not require that a testator should *ask* the subscribing witnesses to attest his will; his assent either express or implied, is sufficient; provided the act be done with his knowledge, and not in a clandestine or fraudulent way.

In the execution of wills, as well as of deeds, the maxim, "*non quod dictum, sed quod factum est, inspicitur,*" will hold good.

Every person is presumed to be of sound mind and memory, unless the contrary is proved; and therefore the burthen of proof lies upon the person who asserts unsoundness of mind; unless a previous state of insanity has been established, in which case the burthen is shifted to him who claims under the will.

After the probate, that is, after proof of the formal execution of a will, the sanity of the testator is always to be presumed in favor of the will; the insanity to be proved by him that alleges it.

Whenever satisfactory proof establishes the doing of an act, especially if it conform to the formalities required by law, it must be considered, in the absence of opposing proof, as done by a reasonable and sane person.

The testator affixed his mark to the paper propounded as his will, with the assistance of A., one of the subscribing witnesses who did so at the request or with the assent of the said testator, who being thereupon asked, if he acknowledged the same to be his mark, or words to that effect assented; that thereupon he was further asked by the said A., if he wished the witnesses B. and C., and himself, to attest said paper as his last will and testament, or words to that effect, to which he assented; that said witnesses did attest the same by subscribing their names thereto, by his request, in his presence, and in the presence of each other; that said paper was then delivered by the witness A., to the testator, who handed it to his wife, and requested her to take care of it. HELD:

That said paper writing was duly executed, provided that at the time of the execution, the testator was of sound and disposing mind, and mentally capable of executing a valid deed or contract.

Higgins, *et al.*, *vs.* Carlton and Scaggs.

The law concedes to a man of sound mind, the right to dispose of his property in any manner he may deem proper, consistent with its policy; and it is no valid objection to a will that the testator gave his property to his wife, or to strangers to his blood, provided he was mentally competent, and was free from undue influence at the time.

It is not sufficient to avoid a will, that its dispositions are imprudent and unaccountable.

The influence to vitiate a will, must be an unlawful influence, and exerted to such a degree as to amount to force or coercion, destroying free agency; it must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another; and there must be satisfactory proof that the will was obtained by such coercion.

Neither age, nor sickness, nor extreme distress, nor debility of body, will disqualify a person for making a will, if sufficient intelligence remain.

A testamentary instrument may be established against the evidence of one of three subscribing witnesses.

The mental incapacity which disqualifies a party for making and executing a valid will, must exist at the time of his doing so.

The testamentary capacity required by the laws of this State, is that the testator "shall be of sound and disposing mind, and capable of making a valid deed or contract:" that is, he must have sufficient capacity at the time of executing his will, to make a disposition of his estate with judgment and understanding in reference to the amount and situation of his property, and the relative claims of the different persons who should be the objects of his bounty. But under this rule, a jury is not required to reject a will because in their opinion, its provisions are unjust and injudicious; but they may be considered by the jury in determining the capacity of the testator.

APPEAL from the Circuit Court for Anne Arundel County.

The will of John Higgins, of Prince George's county, having been offered for probate in the office of the Register of Wills of said county, the appellants on the 9th of July, 1866, filed a petition and *caveat*, which the appellees' executors appointed by said will, answered; and upon the prayer of the appellants, the Orphan's Court of Prince George's county, sent six issues to the Circuit Court for said county, for trial. The issues involved the questions: first, of execution and publication; second, of the testamentary capacity

of the testator; third, of undue influence, importunities and persuasions; fourth, whether the signature of the said John Higgins was his own voluntary act, to which he was induced, with a knowledge of the contents of the paper, and without the exercise of undue influence? fifth, whether the execution of the said paper was procured by fraud or misrepresentation? sixth, whether the said Higgins, at the time the said paper writing was executed, was capable of knowing its contents, and fully comprehending its import?

Subsequently, at the instance of the appellees, the case was removed to the Circuit Court for Anne Arundel county, and upon trial had, the jury found for the caveatees on all the issues.

*1st Exception:* At the trial, the *factum* of the will being put in issue, and the Court having decided that it was incumbent on the caveatees to prove the due execution thereof, the subscribing witnesses to said paper writing were examined: N. C. Stephen, one of the subscribing witnesses, testified that he "drew the will from a memorandum placed in his hands by Mrs. Higgins, the wife of the testator, at the suggestion of Mr. Higgins, he having applied to her for it." Upon cross-examination of this witness, he was asked to produce the memorandum referred to, which he did, and stated that there was a difference between the residuary clause in the will and the memorandum, and that in writing the will he did not pursue the memorandum exclusively. The witness was then asked, "if the memorandum differed from the will in any other respects?" To this question the caveatees objected, and the Court, (BERRY, J.,) sustained the objection, and refused to permit the same to be answered; and to this ruling the caveators excepted.

*2d Exception:* The same witness having been asked, "why he made in the will the change from the memorandum, in reference to the devise of the land to Mrs. Ferrall," said, "he did not consult with the testator about the Ferrall land, or talk with him upon the subject, and that he, the witness,

put it in the will." Being desirous to explain, he was proceeding to give his reasons for making this alteration, when the caveators objected, but the Court overruled the objection, and permitted the witness to assign his reasons. To this ruling the caveators excepted.

*3d Exception:* Omitted, inasmuch as the Court declined to express any opinion upon the question there presented.

*4th Exception:* The caveators upon cross-examination proved by Henry T. Scott, one of the subscribing witnesses to the will, that the testator did not ask him to attest the will; when the witness arrived the testator was a *dying man*, he died about half past ten by the clock, his voice was very tremulous when he signed the will; witness could not remember who asked him to come in to attest the will, but was positive that the testator did not ask any of the witnesses to subscribe their names. The witness was then asked if he heard the testimony of John T. Ferrall, as to the conversation of the testator when he, the witness, was not present in the room, but had been there just before, and was in and out of the room from time to time? to which he replied, yes. And he was then asked, " whether at the time mentioned by Ferrall, the said testator had the physical capacity to hold the conversation detailed by him?" The caveatees objected to the witness answering the said question, and the Court sustained the objection, and refused to permit the question to be answered; to this ruling of the Court the caveators excepted.

*5th Exception:* Abandoned.

*6th Exception:* The caveators asked Mrs. Higgins " if she had ever had a conversation with the witness Scott, in reference to the memorandum from which the will was drawn?" and being answered no, then proposed to ask Scott " whether he had ever had a conversation with Mrs. Higgins in reference to said memorandum, on the day of the execution of the will, and whether she did not say that the paper was prepared by her without the knowledge of the testator, and without his having read it or heard it read?" To this question the

caveatees objected, and the Court refused to permit it to be answered. To this ruling the caveators excepted.

*7th Exception:* Dr. Belt, a witness on the part of the caveatees, being asked, upon cross-examination by the caveators, upon what portion of the testimony of the witness Scott, he founded his opinion of Higgins' capacity? said it was from Scott's statement that Mr. Higgins had talked to the last, but he was unable to repeat any conversation detailed by the witness Scott, upon which he had based his opinion. The caveators as rebutting evidence, asked Scott the following question: Dr. Belt, in his examination, having stated that he predicated his opinion of Mr. Higgins' capacity to execute a valid deed or contract, upon what he saw or knew of him, and in part upon your evidence, now state whether or not in said evidence you stated that Mr. Higgins was irrational and wandering in his conversations or otherwise? To this question the caveatees objected, and the Court sustained the objection, and refused to permit the witness to answer it; to this ruling of the Court, the caveators objected.

*8th Exception:* Upon all the evidence in the cause, the caveators offered a series of prayers, thirteen in number. The Court granted the first, second, fourth, sixth, seventh, eighth, ninth, tenth, twelfth and thirteenth. The third prayer was as follows: "Unless the jury shall believe from the evidence that the signature or mark of John Higgins to said paper, was attested and subscribed by three or four credible witnesses in his presence, they must find on the first issue for the caveators;" which was granted with the following modification: "And that the meaning of the language, 'credible witnesses,' is that at the time of the execution of the will, the subscribing witnesses were not incompetent to testify by reason of infancy, insanity or mental imbecility, or any other cause." The fifth prayer was as follows: "Unless the jury believe from the evidence, that the said paper writing was attested by the subscribing witnesses at the request of the said John Higgins, they must find on the first issue for

the caveators;" which was granted with the following modification: "But it is a sufficient request on the part of the testator, if the jury find from the evidence aforesaid, that he sent for the witness Stephen, to write his will, and after the same was read to, and approved by him, he was asked by said Stephen, if he wished to execute the said will, at that time or next day, and replied the sooner the better, and desired them to wait for Mr. Gallant, as a witness, as he was younger than Mr. Carroll, and if the jury further find that, after the testator had made his mark, in the manner stated in the evidence, he was asked by the said Stephen if he desired him, Mr. Gallant, and Mr. Scott, all of whom were then present to attest his mark or signature to said paper, and that he said he did, or assented by a nod, and thereupon the said named parties did attest the same in his presence." The eleventh prayer which was refused by the Court was as follows: "The *onus probandi* is on the caveatees to establish the fact of the execution of the paper writing, and also that the said John Higgins was at the time of the execution of the said paper writing, of sound and disposing mind and capable of making a valid deed or contract." To the rejection of the eleventh prayer, and to the modification of the. third and fifth prayers, by the Court, the caveators excepted.

*9th Exception:* The caveatees then asked the Court to grant the following prayers:

1st. If the jury believe from the evidence that the said John Higgins affixed his mark to the paper writing, propounded as his last will, and that in doing so, he was assisted by the witness Stephen, by the request, or with the assent of said Higgins, and that thereupon the said Higgins was asked if he acknowledged the same to be his mark, or words to that effect, to which he assented, and that thereupon he was asked by the said Stephen, whether he wished the witnesses Gallant, Scott and himself to attest it as his last will and testament, or words to that effect, to which he assented, and thereupon said

Higgins, *et al.*, *vs.* Carlton and Scaggs.

witnesses did attest the same, by subscribing their names thereto, by his request, in his presence, and in the presence of each other, said paper writing was then delivered by said Stephen to the testator, and that the testator then handed said paper writing to his wife, and requested her to take care of it; then the said paper writing was duly executed, provided the jury shall further find that at such execution, the testator was of sound and disposing mind, and mentally capable of executing a valid deed or contract.

2d. That the presumption of law is in favor of the sanity of the testator, and of his capacity to make a will, and the burden of proof is on the caveators to establish a want of testamentary capacity, in order to justify the jury in setting aside the will on that ground.

3d. The law concedes to a man of sound mind, the right to dispose of his property in any manner he may deem proper, consistent with its policy, and it is no valid objection to a will that the testator gave his property to his wife, or to strangers to his blood, provided he was mentally competent, and was free from undue influences at the time.

4th. It is not sufficient to avoid a will and testament, that its dispositions are imprudent and not to be accounted for.

5th. Withdrawn.

6th. If the jury believe from all the evidence in the cause, that the only influence ever possessed or exercised by Mary Higgins, his wife, over the testator, her husband, was that of a kind and affectionate wife, gained by her virtues, affection and kindly offices and attentions, then the existence of such an influence so possessed, acquired and exerted, is of itself no ground for setting aside the will.

7th. Every person of twenty-one years of age, is presumed to be of sound mind and competent to make a will, and this presumption extends throughout his life, no matter to what age he may live; the *onus* of establishing incapacity is on the parties who assail the will; extreme old age does not of itself disqualify a person for making a will; the law looks only

to the competency of the understanding, and neither age nor sickness, nor extreme distress, nor debility of body, will affect the capacity to make a will if sufficient intelligence remain.

8th. Should the jury find the due execution by John Higgins, of the paper writing described in the issues in this cause, and further find that the said John Higgins was of sound mind, and capable of executing a valid deed or contract, at the execution of such paper writing, then that, in order to set aside said paper writing upon the ground of undue influence, the jury must be satisfied from all the evidence in the case, not only that such influence existed, but that it was exerted for the purpose of procuring the execution of said paper writing, and that the same was obtained by means of the undue influences so exerted.

9th. That the undue influence which will avoid a will, must be an unlawful influence, on account of the manner and motive of its exertion, and must be exerted to such a degree as to amount to force or coercion, destroying free agency; it must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very stong ground in favor of a testatmentary act; and there must be satisfactory proof that the will was obtained by this coercion, or by importunities which could not be resisted, so that the motive was tantamount to force or fear.

10th. Should the jury believe from the evidence in the cause, that the supposed testator, John Higgins, was of sound and disposing mind, and capable of making a valid deed or contract, at the time of executing and acknowledging the paper writing in the issue mentioned, purporting to be his last will and testament, and that he did execute and acknowledge the said paper writing as his last will and testament, they should find for the caveatees on the first and second issues, notwithstanding the jury might believe he was incapable of making a valid deed or contract, at any prior or subsequent time.

11th. That if the jury find from the evidence in the cause, that John Higgins was, at the time of executing the will referred to in this case, of sound and disposing mind, and capable of making a valid deed or contract, then he was in the possession of that description of mental capacity, which is required by the testamentary act of this State, and that the meaning of the words, "sound and disposing mind and capable of making a valid deed or contract" in respect to the disposition of his property by last will and testament, is, that he must have had sufficient capacity at the time of executing the said will, to make a disposition of his estate with judgment and understanding in reference to the amount and situation of his property, and the relative claims of the different persons who should have been the objects of his bounty.  But the meaning of the words judgment and understanding, is not that the jury should reject the will because they may believe that it is in its provisions unjust and injudicious, although the provisions of the will may be considered by them, in deciding the question as to the capacity or incapacity of the testator.

12th. That from the whole evidence in the case, it is competent for the jury to find the due execution of the will in issue, and a sufficient testamentary capacity in the testator, although one of the subscribing witnesses may have testified against the due execution of the will aforesaid, and against the testamentary capacity of the testator.

13th. That the influence which will avoid the will must be exerted to such a degree, as to amount to force or coercion, destroying free agency, it must not be the influence of affection or attachment, nor the mere desire of gratifying the wishes of another, for that would be a very strong ground in favor of a testamentary act, and there must be satisfactory proof that the will was obtained by this coercion or by importunities which could not be resisted, so that the motive was tantamount to force or fear.

The third, eighth and tenth prayers, were admitted by consent, the ninth was rejected, and the Court granted the other

prayers, and instructed the jury accordingly; to this ruling of the Court, the caveators excepted. And the verdict being in favor of the caveatees, the caveators appealed.

The cause was argued before BARTOL, C. J., NELSON, STEWART, BRENT, GRASON, MILLER and ROBINSON, J.

*Daniel Clarke, Thomas F. Bowie* and *Thomas G. Pratt* for the appellants, contended:

1st. That there was error in the ruling of the Court, which constituted the first exception. Because on cross-examination, the question was proper in order to test the *accuracy of the recollection of the witness,* and to contradict the evidence given by the witness on his examination in chief, that "he drew the will from a memorandum placed in his hands by Mrs. Higgins, at the suggestion of Mr. Higgins. 1 *Greenl. Ev.,* sec. 446. The question was also admissible in determining the *genuineness* of the memorandum. The validity of the will must depend upon the establishment of the memorandum, from which it was prepared. Was it the memorandum of Higgins? If the will were not drawn from the memorandum, furnished by Higgins, it was not his will. The drawer of the will, Stephen, upon cross-examination admitted that in preparing the will, he did not pursue the memorandum exclusively.

2d. That the Court erred in permitting the witness Stephen to give his reasons for making in the will, a change from the memorandum in reference to the devise of the land to Mrs. Ferrall. Having stated that he neither consulted nor talked with Higgins about the Ferrall land, but that he, the witness, put the clause in, the reasons which governed him were altogether *irrelevant.* The case of *Burckmyer & Adams vs. Whiteford,* 6 *Gill,* 13, does not sustain the ruling of the Court. In that case the witness had made no answer to the question, which showed that his reasons were *irrelevant.* Suppose the witness in that case, had, in reply to the question, *first* stated

that the act of erasure was *unauthorized*, would it have been competent for him to go further, and state *his reasons* for doing an unauthorized act?

3d. That the Court committed error in not permitting the witness Scott, (who had attested the will), upon cross-examination to explain why he objected to witnessing the will, he having stated in his examination in chief that he had so objected.   The propriety of the question is sustained by the case of *Burckmyer & Adams vs. Whiteford*, 6 *Gill*, 13.   The witness might have stated, in reply to the question, facts pertinent to the issues.   The ground of his objection might have been, that Higgins was too near death to comprehend the nature of the act of signing the will; or that fraud was being used or duress was employed to procure the execution or signing of the paper.   1 *Greenl. Ev. sec.* 445.

4th. The question, the refusal to permit which to be answered, is the ground of the fourth exception, was proper; it was not put to the witness as an *expert.*   Where a witness has had opportunities of knowing and observing the conversation, conduct and manners of a person whose sanity is in question, it has been held that the witness may depose not only to particular facts, but as to his opinion or belief as to the sanity of the party, founded on such actual observation. *Clary vs. Clary*, 2 *Iredell*, 78; 1 *Greenl. Ev., sec.* 440, *and note; Brooke, et al., vs. Townshend*, 7 *Gill*, 10.

So, where a witness shows that he was in and out of the room about the time, and had opportunities of knowing and observing the physical condition of the testator, on the same principle he can depose as to *the fact* of his *physical* capacity to do a certain act, and can also express his opinion or belief as to the physical capacity of the party founded on such actual observation and knowledge.

In this case the witness is asked as to the *fact* of Higgins having the physical capacity to hold the conversation detailed. The question was relevant as tending to contradict the witness Ferrall.  Its weight for that purpose was a question for the jury.

5th. That Mrs. Higgins, having been afforded a full and fair opportunity to recollect, by calling her attention to Scott, as the person with whom it was asked, whether she had had the conversation, the reason of the rule was thus fairly complied with. *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 127; 1 *Greenl. Ev.*, sec. 449.

6th. Dr. Belt having stated that he predicated his opinion of the testator's capacity to execute a valid deed or contract, in part upon the evidence of the witness Scott, it was competent for the caveators to show by said Scott, that Dr. Belt was mistaken as to the facts testified to by said Scott, and upon which the doctor based his opinion. If the facts upon which an expert bases his opinion are incorrect, this can be shown in order to destroy the force and effect of his opinion: 1 *Greenl. Ev.*, sec. 440; *Cilley vs. Cilley*, 34 *Maine*, 162.

7th. That there is no error in the third prayer of the caveators. It relates exclusively to the attestation and subscribing of the will, by three or four credible witnesses; and assumes that it must be done in the presence of the testator. *Code of Pub. Gen'l Laws*, *Art.* 93, *sec.* 301. The modification of this prayer, while it correctly defines "credible witnesses" as competent witnesses at the time of attestation or execution, (2 *Greenl. Ev.*, sec. 691; *Shaffer's Lessee vs. Corbett*, 3 *H. & McH.*, 513,) makes *infancy* a reason of incompetency. We have been unable to find any case which renders the mere fact of infancy a ground of incompetency in a subscribing witness. The fifth prayer of the caveators was also correct and needed no modification. *Code of Public Gen'l Laws*, *Art.* 93, *section* 301; *Cramer vs. Crumbaugh*, 3 *Md. Rep.*, 491; 2 *Greenl. Ev.*, secs. 675, 676, *and notes*. The finding of the facts stated in the modification of this prayer, did not warrant the jury in finding a *sufficient* request, unless they found another fact not embraced in the prayer: that at the time "he said he did, or assented by a nod" *he knew the instrument to be his will*. The modification singles out the testimony of only one witness, Mrs. Higgins, and predicates an instruction

on that alone, without reference to the evidence of other witnesses—this is error; it is also erroneous in that it permits the jury to find a sufficient request to the attestation, although they find that the will was not signed by the testator, or by any other person by his express direction, and in his presence. There can be no sufficient attestation if the will have never been properly signed or executed.  2 *Greenl. Ev.*, sec. 675; *White vs. Trustees of the British Museum*, 6 *Bing.*, 310; *Hall vs. Hall*, 17 *Pick.*, 379; *Dewey vs. Dewey*, 1 *Metc.*, 349.  If the third and fifth prayers were correct, the Court had no right to annex modifications to them, against the consent of the caveators.  *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 127; *Keener vs. Harrod and Brooke*, 2 *Md. Rep.*, 63; *Day and Gorsuch vs. Day*, 4 *Md. Rep.*, 262; *Atwell vs. Miller and Mahew*, 6 *Md. Rep.*, 10.  In support of the eleventh prayer it is insisted, that where the capacity of the testator is impeached, the *onus probandi* is on the party propounding the will.  Testamentary capacity is defined by statute.  To establish a will, therefore, there must be proof both of capacity and of the fact of execution.  *Code, Pub. Gen'l Laws, Art.* 93, sec. 300; *Cramer vs. Crumbaugh*, 3 *Md. Rep.*, 491; *Barry vs. Rutlin*, 6 *Engl. Eccle. Rep.*, 417; *Dorsey vs. Sheppard, et al.*, 12 *G. & J.*, 192; *Cilley vs. Cilley*, 34 *Maine*, 162; *Mackenzie vs. Handasyde*, 2 *Haggard*, 211, (4 *Eng. Eccl. Rep.*, 92.)

8th.  The first prayer of the caveatees was improperly granted, because it does not require the jury to find that the said paper writing was either signed by the said John Higgins, or by some other person in his presence, and by his express directions.  It also assumes that a mere *subsequent assent* on the part of the testator, without a previous express direction, is equivalent to an express direction, which is error in a case where the signature is made by another person. It is further erroneous because it does not require the jury to find that Stephen, Scott and Gallant, at the time of the attestation, were credible, *i. e.*, competent witnesses.  Unless attested by three or four credible or competent witnesses, the

paper writing was utterly void and of none effect. *Collins vs. Nicols*, 1 *H. & J.*, 399; *Code, Pub. Gen'l Laws, Art.* 93, sec. 301; *Pauline Ruoff's Appeal*, 26 *Penna.*, 219. The second prayer was improperly granted, if the authorities referred to, sustain the eleventh prayer of the caveators. See authorities referred to in support of the eleventh prayer of the caveators. The fourth prayer ought not to have been granted, because it was a mere abstract proposition of law, and too general. *Hurn's Lessee vs. Soper*, 6 *H. & J.*, 276; *Coale vs. Harrington*, 7 *H. & J.*, 147; *Penn vs. Flack and Cooley*, 3 *G. & J.*, 369. The sixth prayer is erroneous, because it asserts that an influence gained by the virtues, affection and kindly offices of a wife, cannot be exerted over a testator, so as to invalidate a will. If the influence gained in this way, was so overcoming and powerful, that the testator was unable to resist the same in making a disposition of his property, and deprived him of *free agency*, such an influence would be sufficient to set aside a will. *Davis vs. Calvert*, 5 *Gill & John.*, 302. The seventh prayer is excepted to, because it is a mere declaration of general principles, and does not apply them to the facts in the case; and because it announces principles of law inconsistent with the eleventh prayer of the caveators, which is supported by the cases cited. The thirteenth prayer is erroneous, because it denies that the influence of affection may not be exerted to such an extent as to invalidate a will or testament. *Davis vs. Calvert*, 5 *G. & J.*, 302.

*James Revell* and *Robt. J. Brent*, for the appellees, argued:

1st. That the counsel for the appellants were properly denied the privilege of testing the witness Stephen, by any such illegal standard as his recollection of the contents of two documents in the possession of the counsel and the Court. The pertinency in such enquiries as to secondary evidence of the contents of two papers, already in evidence, is not apparent; nor can further illegal evidence be insisted on, because other illegal testimony had not been previously objected to by

the caveatees. The best evidence of which the case is susceptible, is alone admissible. 1 *Greenl. Ev.*, secs. 88, 447, 463, 465; *The Queen's Case*, 2 *Brod. & Bing.*, 288, (6 *Eng. Com. Law*, 115.)

2d. We see no error in the ruling of the Court, which gave occasion to the second exception, and hold that it is covered by the form of the question and the decisive case of *Burckmyer & Adams vs. Whiteford*, 6 *Gill*, 13.

3d. Scott, one of the subscribing witnesses, being called to the stand, not as a witness of the caveatees, but as a compulsory witness under the requirements of law, (see *Code of Pub. Gen'l Laws*, secs. 319, 323,) stated, of his own accord, that when he was called in to witness the will, he objected, but afterwards went in and attested it. Thereupon, it was insisted on the part of the caveators, that the witness should give the reasons why he objected at first; but the Court as we think, very properly refused the demand. The reasons of the witness were not asked for by us, nor were they pertinent to the issue. 1 *Greenl. Ev.*, sec. 443; *Bootle vs. Blundel*, 19 *Vesey*, 502, 508. In the case of *Bull vs. Schuberth*, 2 *Md. Rep.*, 42, 45, this Court affirmed a ruling by which part of a conversation was made evidence, and other *irrelevant* declarations in the same conversation excluded when offered by the adverse party. If the Court were wrong in excluding the reasons in the first instance, they having been subsequently given, the caveators were not prejudiced by the ruling. *Greenleaf's Lessee vs. Birth*, 5 *Peters*, 131.

4th. That the Court was right in not permitting the subscribing witness Scott, who was no *expert*, to give his opinion of the physical ability of the testator to hold conversations with another witness, when Scott was not present, and which had been positively testified to by the witness Ferrall. It is not allowable to impeach a witness by the *opinion* of another witness, not an expert, that it was physically impossible for the testator to *have spoken* as testified to. *Dorsey vs. Warfield*, 7 *Md. Rep.*, 73; *Mason vs. Harrison & Boggs*, 5 *H. & J.*, 480;

*Brooke, et al., vs. Townshend,* 7 *Gill,* 27; *Scaggs vs. Balto. & Wash. Railroad Co.,* 10 *Md. Rep.*, 268; *Green vs. Caulk,* 16 *Md. Rep.,* 576; *Weems vs. Weems, et al.,* 19 *Md. Rep.,* 345.

5th. It is a familiar principle of law, that before you can contradict an adverse witness, you must lay a proper foundation, by calling the attention of the witness to the *time and place* of his alleged declarations. Mrs. Higgins not being a party to the record, was entitled to the benefit of the protection extended to her by the Court. 1 *Greenl. Ev.,* sec. 462.

6th. That there was no error in refusing to allow Scott to be asked, with a view to impeach Dr. Belt's opinion "whether he, Scott, had stated that Mr. Higgins was irrational and wandering in his conversations or otherwise," especially as Dr. Belt had only referred to the fact stated by Scott, that the testator had *talked* to the last, but had not said that Scott had testified to *irrational* conversations, &c., of the testator.

7th. The third and fifth prayers of the caveators were granted, and they except only to the modification which was respectively annexed to them by the Court. The modification to the third prayer only defines who are "credible witnesses," and the objection to it cannot be maintained.— 1 *Redfield on Wills,* 253, 254; *Keener vs. Harrod and Brooke,* 2 *Md. Rep.,* 73; *Hall vs. Hall, et al.,* 6 *G. & J.,* 404; *Coates and Glenn vs. Sangston, Garn. of Cunningham,* 5 *Md. Rep.,* 133. The qualification to the fifth prayer merely states facts, which if found, amount in law to a request by the testator that the subscribing witnesses should attest the will; and it is supported by authority. *Sechrest, et al., vs. Edwards, et al.,* 4 *Metcalfe,* 163; *Mason vs. Harrison & Boggs,* 5 *H. & J.,* 480; *Cramer vs. Crumbaugh,* 3 *Md. Rep.,* 501; *Welty and Wife vs. Welty, Ex'r of Hornaker,* 8 *Md. Rep.,* 23; *Whitenack vs. Stryker and Voorhies,* 1 *Green, Ch. Rep.,* 9. The eleventh prayer assumes that in addition to satisfactory proof of execution, the propounders of the will are required to prove, affirmatively, mental capacity. We maintain that after proof of the execution of the will, and in the absence of all opposing evi-

dence, the law presumes capacity and knowledge of its contents. This is the true principle, as the law presumes capacity in every man who has performed an act. 1 *Greenl. Ev.*, sec. 42; 2 *Greenl. Ev.*, sec. 689; 1 *Redfield on Wills*, ch. 3, and especially *note* 21 *to sec.* 15, pp. 30, 40, 41, 44, 48, 51; *Brooks, et al., vs. Barrett, et al,* 7 *Pick.*, 94; *Sloan vs. Maxwell, et al.,* 2 *Green's Ch. Rep.*, 580; *Chandler vs. Ferris,* 1 *Harr.*, 454, 461; *Stevens vs. Van Cleve,* 4 *Wash. C. C.,* 262; *Browne vs. Molliston,* 3 *Wharton,* 137; *Dorsey vs. Warfield,* 7 *Md. Rep.*, 74; *Brooke, et al., vs. Townshend,* 7 *Gill,* 24. The generality of the language used by the Court of Appeals in *Cramer vs. Crumbaugh,* 3 *Md. Rep.*, 502, 504, 505, was not intended to controvert this clear principle; on the contrary it is substantially affirmed, when the Court says that " where the capacity of the party is wholly unimpeached and an absence of proof of fraud, the law presumes a knowledge on the part of the testator of the contents of the paper which he executes." What sort of presumed knowledge can a testator have, if it be not the knowledge of an intelligent and capable being?

8th. The first prayer of the caveatees was properly granted, if the modification to the fifth prayer of the caveators, was correct, as we have endeavored to show. The second prayer is correct, if the caveators' eleventh prayer was properly rejected. *Browne vs. Molliston,* 3 *Wharton,* 137. The third prayer was admitted. The fourth prayer is fully sustained by *Cramer vs. Crumbaugh,* 3 *Md. Rep.*, 500; and *Davis vs. Calvert,* 5 *G. & J.,* 300. The sixth prayer is supported by the following authorities; *Browne vs. Molliston,* 3 *Wharton,* 138; *Williams vs. Goude,* 1 *Hagg.*, 577, (3 *Eng. Eccl. Rep.*, 252;) *Lowe vs. Williamson,* 1 *Green's Ch. Rep.*, 88; *Small vs. Small,* 4 *Green,* 223; *Gardner vs. Gardner,* 22 *Wendell,* 540; *Miller, et al., vs. Miller,* 3 *Serg. & Rawle,* 269; 1 *Redfield,* 523–4, secs. 28 and 44; *Davis vs. Calvert,* 5 *Gill & Johns.,* 301. The seventh prayer rests upon authority. *Van Alst vs. Hunter,* 5 *Johns. Ch. Rep.*, 159 1 *Redfield on Wills,* 98; *Whitenack vs. Stry-*

*ker and Voorhies*, 1 *Green, Ch. Rep.*, 12. The eighth prayer admitted; the ninth prayer rejected; the tenth prayer admitted; the eleventh prayer is in the language of *Colvin vs. Warford, et al., Lessee,.* 20 *Md. Rep.*, 367, 368, 387, 388. The twelfth prayer was correctly ruled, as the cases show that wills of real estate have been sustained against all the subscribing witnesses, much less *one* witness. 1 *Jarman on Wills*, 228; *Le Breton vs. Fletcher*, 2 *Hagg.*, 558, (4 *Eng. Eccl. Rep.*, 213;) *Lowe vs. Jolliffe*, 1 *Wm. Black.*, 365; *Hudson's Case*, 2 *Barb. Ch. Rep.*, 60; *Mackenzie vs. Handasyde*, 2 *Hagg.*, 211, (4 *Eng. Eccl. Rep.*, 92;) *Powell on Devises*, 473. The thirteenth prayer is warranted by authority; see authorities referred to in support of the caveatees, sixth prayer.

BRENT, J., delivered the opinion of this Court.

This case arises upon a *caveat*, filed in the Orphans' Court of Prince George's county, to the will of John Higgins. Issues involving execution, testamentary capacity, fraud and undue influence, were sent up for trial to the Circuit Court for that county. Upon application by the caveatees the case was afterwards removed to the Circuit Court for Anne Arundel county, and it now comes before us upon the several exceptions, taken by the caveators at the trial, to the rulings of that Court.

The first exception alleges error in the Court in refusing to allow a witness, upon cross-examination, to testify in regard to the difference between the contents of a memorandum and the will in controversy. It is necessary in deciding upon the admissibility of this evidence to refer to a part of the testimony previously given by this witness. He was the attorney who drew the will; and upon his examination in chief had stated, that it "was drawn from a memorandum placed in his hands by Mrs. Higgins, to whom, at the suggestion of Mr. Higgins, he applied for it." Upon cross-examination, the caveators asked him to produce this memorandum. This he

did, and handed it over to them. Upon further cross-examination he testified to certain discrepancies between it and the will, and to the fact "that in drawing the will he did not pursue the memorandum exclusively." He was then asked, "if the memorandum differed from the will in any other respects?" Upon objection being made by the counsel for the caveatees, the Court refused to permit the question to be answered. It has been argued that the evidence was admissible upon three grounds—to test the accuracy of the recollection of the witness, to contradict him, and to prove the *genuineness* of the memorandum. The last ground is wholly untenable, and is too clearly in violation of the rules of evidence to be seriously entertained. As a general proposition, a party has the undoubted right, upon cross-examination, to test the accuracy of the recollection of a witness, and to show that his statements are contradictory. But this cannot be done in violation of other equally well settled rules. The memorandum referred to, had not been given in evidence to the jury, and it is apparent that the witness could not have answered the question, put to him by the caveators, without proving by *parol* a part, if not all, of its contents. It is no reason in favor of the admissibility of this evidence, that the witness had been permitted to speak, without objection, of some of the differences between this memorandum and the will. The fact that illegal testimony has been permitted to go to the jury, without objection, cannot be urged as a ground for allowing other testimony, inadmissible under the rules of evidence, to be given when objection is made. This memorandum being in Court, its contents could not be proved by parol for any purpose. What is in writing must be proved by the writing itself. In the *Queen's case*, 2 *Bro. & Bing.*, 288, (6 *E. C. L. Reps.*, 115,) the following question was submitted to the Judges, "whether, when a witness is cross-examined, and upon the production of a letter to the witness under cross-examination, the witness admits that he wrote that letter, the witness can be examined in the Court below, whether he did or did

Higgins, *et al.*, *vs.* Carlton and Scaggs.

not in such letter make statements, such as the counsel shall, by questions addressed to the witness, inquire are or are not made therein?" They unanimously determined that the evidence was inadmissible. ABBOTT, C. J., in delivering their opinion, remarks, "the Judges do not conceive that they are presuming to offer any new rule of evidence, now for the first time introduced by them; but, that they found their opinion upon what, in their judgment, is a rule of evidence as old as any part of the common law of England, namely, that the contents of a written instrument, if it be in existence, are to be proved by that instrument itself, and not by parol evidence." The offer in this case is clearly within the prohibition of the rule, for the question could not have been answered without proving by parol, the contents of the memorandum.

The case of *Burckmyer & Adams vs. Whiteford*, 6 *Gill*, 13, if any authority is needed, disposes of the second exception. The witness was asked, "why he made in the will the change from the memorandum, in reference to the devise of the lands to Mrs. Ferrall?" His reasons for doing so are certainly responsive to the question. Upon his proceeding, however, to give them, the very party asking the question, objected. It is now argued that they were inadmissible, because the necessary inference of their being irrelevant was raised by the witness stating "he did not consult Higgins or talk with him upon the subject." The reasons given by the witness are not in the record, nor is it necessary that we should know what they were, in determining the point as it is presented. Looking, however, to the preceding testimony, the inference is in favor of their relevancy, or at least it cannot be assumed they were necessarily irrelevant. A third party, at the request of Higgins, may have directed the alteration to be made. That it was done by his authority, and for reasons satisfactory to him, cannot be doubted. The devise, as it is found in the will, was approved by Higgins, for this witness states, that after preparing the will, "he read it to the testator *verbatim et literatim*, who ratified it." We do not, there-

fore, perceive that there was any error, or injustice done to the appellants, in permitting the witness to answer a question put to him by themselves.

It has been repeatedly settled by the decisions of this Court, that a judgment will not be reversed, where it appears from the record, the appellants have not been injured by the rulings of the Court below, although such rulings may be erroneous. For this purpose, it is proper to look to the whole record, and not, as was argued in this case, to that part only of the record, which precedes and includes the particular exception under consideration. We think it unnecessary, and do not mean to express any opinion upon the question presented by the third exception. The error there complained of, even conceding the ruling of the Court to be wrong, does no injury to the appellants. The testimony, sought to be elicited by them, is afterwards given by the witness, Scott, and is found in the evidence contained in the seventh exception. He there assigns his reasons for objecting to sign the will in controversy, as one of the attesting witnesses, and the appellants have had the benefit of those reasons before the jury.

The fourth exception is taken to the refusal of the Court below to allow a witness to give in evidence his opinion of the " physical capacity " of the testator to hold conversations testified to by another witness, the witness under examination not being present. It is properly said in *Phillips vs. Kingfield*, 1 *Appleton's R.*, 379, that " the opinions of a witness are not legal testimony except in special cases; such for example, as experts in some profession or art, those of the witnesses to a will, and in our practice, opinions on the value of property. In other cases, the witness is not to substitute his opinion for that of the jury; nor are they to rely upon any such opinion instead of exercising their own judgment, taking into consideration the whole testimony." The Courts of Maryland have gone a step further, and allowed witnesses to express their opinion upon the mental condition of a testator, whose will is controverted, unless it be a mere naked

opinion, unaccompanied by the facts and circumstances upon which it is founded. It is not claimed that the witness in this case is an expert, nor is he brought within any of the other exceptions to the rules. We have failed to find a single authority in which testimony of this character has been admitted. The rule has already been sufficiently relaxed, and we think the doctrine of admitting the opinions of witnesses has been carried quite as far, as is consistent with a proper administration of the law.

The fifth exception having been abandoned by the appellants, the next question arises upon the sixth exception. The witness was asked, for the purpose of laying a foundation to contradict her, " if she had ever had a conversation with the witness Scott, in reference to the memorandum from which the will was drawn?" Having answered in the negative, Scott was afterwards called, and the question, set out in this exception, put to him by the caveators. The Court, upon objection made, refused to permit him to answer it; and in this refusal the appellants allege there is error. In *Whiteford vs. Burckmyer*, 1 *Gill*, 139, the rule is laid down, that " the witness, whom it is intended to impeach, should have a full and fair opportunity to recollect, by calling his attention to dates, names and other attendant circumstances connected with the matter, about which he is charged to have made different statements." In the present case the memorandum spoken of, had been written nine months before the date of the will in controversy, and to have given the witness "a full and fair opportunity to recollect," her attention should have been called to something more than the name of the party. The question embraced a long period of time; and justice to the witness required that her attention should have been directed, at least with a reasonable degree of certainty, to dates and other attendant circumstances. The question put to her was of the most general character; and for the purpose for which it was asked, is liable to another fatal objection. She was not asked whether she had made certain statements

about this memorandum to the witness Scott, but simply if she had ever conversed with him about it. Where the object is to lay a proper foundation to discredit a witness by proof of any thing he may have said, it is not alone sufficient to direct "his attention to dates, names and other attendant circumstances;" he must also be asked "whether or no he has said or declared that, which is intended to be proved."— 2 *Brod. & Bing.*, 313. In this view of the law, we think a proper foundation was not laid for the introduction of the testimony offered, and that the Court was right in rejecting it.

The seventh exception also presents a matter of evidence. The question asked by the caveators was irregular. The caveatees had closed their case, and the caveators, at that stage of the trial, were entitled *strictly* to offer rebutting evidence only. The evidence offered was not of that character. It certainly could not have had the effect to contradict the witness whose testimony it was designed to impeach. He had made no statement that Scott had testified to rational or irrational conversations on the part of the testator. If the testimony had already been given, it was only asking the witness to repeat what he had before said; and if it had not, it was testimony properly admissible upon his examination in chief. In either event the Court had the right to reject it.

We do not concur in the views, urged by the counsel for the appellants, in reference to the right and power of the Court, of its own motion, to modify a prayer. To deny this right would be undertaking to change a practice long established in this State, having its foundation in reason, and well calculated to advance a proper administration of justice. The right to modify a prayer, and error in the modification made, present totally different questions. In the cases referred to by the appellants' counsel, (6 *G. & J.*, 399; 1 *Gill*, 280,) the prayers granted by the Court below were not reversed because the Court had no right to modify them, but because as granted they were erroneous. In *Keener vs. Harrod & Brooke*, 2 *Md. Rep.*, 74, this question was reviewed, and we regard it as

finally settled by that case. The Court say, "however, as a general rule, it may be proper to grant or refuse prayers in the terms in which they are presented, the Court may reject them all and instruct the jury in their own words, or grant the prayers with such explanations or qualifications as may be necessary to a proper understanding of the case."

The next question to be considered is, were the modifications of the caveators' third and fifth prayers correct, or in other words, did the prayers as granted truly state the law of the case? The term "credible witnesses," found in the third prayer, is now settled beyond dispute, as conceded in the appellants' brief, to mean "competent witnesses at the time of attestation." 2 *Greenl. Ev.*, sec. 691; 3 *Har. & McH.*, 513. In giving therefore to the word "credible" in the connection in which it is used in the prayer, its technical and legal signification, the Court correctly stated the law, and gave to the jury such explanation of its meaning as was doubtless "necessary to a proper understanding of the case." The restrictions, in the prayer as modified, upon the competency of attesting witnesses, "by reason of infancy, insanity, or mental imbecility, or any other cause," even if erroneous, could not have resulted in injury to the appellants, for the restrictions apply to the appellees and not to them. The argument, that this prayer submits to the jury questions proper only for the Court, is fully met by the Act of 1862, ch. 154. This law provides that an instruction shall not be reversed "because of a question of law having been thereby submitted to the jury, unless it appears from the record, that such objection was taken at the trial." This objection must appear affirmatively upon the record, and is not to be left as a matter of inference. This record is silent as to any such objection "taken at the trial," and it cannot, therefore, be now urged before this Court.—*Lane, Adm'x of Horine vs. Lantz*, 27 *Md. Rep.* —; *Morrison & Kildow vs. Hammond's Lessee*, 27 *Md. Rep.* —. The facts stated by the Court below, in the modification of the fifth prayer, are sufficient in law, if found by the jury, to constitute

a legal request by the testator for the subscribing witnesses to attest his will. The testamentary law of this State does not require that a testator should ask them to attest it. His assent, either express or implied, is sufficient; provided " the act be done with his knowledge, and not in a clandestine and fraudulent way. *Sec.* 301, *Art. 93, of the Code of Pub. Gen'l Laws,* referring to the attestation of wills, is in these words: "and shall be attested and subscribed in the presence of the said devisor by three or four credible witnesses." If the prayer had been granted by the Court, without the qualification annexed, the instruction might have misled the jury, in supposing that the law required the testator to *ask* the witnesses to sign his will—the word *request* being ordinarily understood in that sense. The Court was therefore right in stating facts, in its modification of the prayer, which, if found by the jury, were sufficient to establish in law the attestation of this will. 5 *Har. & Johns.,* 480; 3 *Md. Rep.,* 501; 8 *Md. Rep.,* 23; In *White vs. British Museum,* 6 *Bing.,* 310, TINDAL, C. J., says, that " in the execution of wills as well as of deeds, the maxim will hold good, '*non quod dictum sed quod factum est, inspicitur.*'"

The question as to the *onus probandi,* where the issue is *testamentary capacity,* has been a great deal discussed by both Judges and text-writers, and has furnished an occasion for the display of much learning and ingenuity. The numerous decisions upon the subject, in this country, are by no means uniform, and many of them are in direct conflict, so that any attempt to reconcile them would be hopeless. They all, however, agree upon the general proposition, that sanity is presumed by law. But, in some of the States, it is held, that this general presumption does not apply to last wills and testaments—they forming an exception to the rule—and that therefore a party propounding a will must not only prove execution, but must also offer positive proof of capacity. 22 *Maine Rep.,* 438; 24 *Maine Rep.,* 162; 2 *Gray,* 524. A different rule, however, is recognized in most of the American

Courts, and it is sustained by reason and the weight of authority. 5 *Johns. R.*, 144; 2 *Green's Ch. R.*, 580; 7 *Pick.*, 94; 4 *Wash. C. C. R.*, 269; 1 *Redfield on Wills*, *Ch.* 3, *Sec.* IV, *sec.* 5. If the presumption of law is in favor of sanity, we can discover no satisfactory reason why it should not be applied to wills, as well as to any other instrument of writing. The argument drawn from the fact, that the statute requires the testator to be "of sound and disposing mind," if a good one, would apply with equal force to the other requirements of the statute. The testator, in terms as affirmative as those in reference to capacity, is required to be of a certain age fixed by the statute. Yet no Court has ever required a party, propounding a will, to prove the age of the testator, until the question was raised upon proof by the contestants. Why the one should be permitted to rest undisturbed upon the doctrine of presumption, and not the other, to say the least, does not seem to be in accordance with sound reason. In *Swinburne*, 44, *pt.* 2, *sec.* 3, it is said, "every person is presumed to be of perfect mind and memory unless the contrary is proved. If it be asked wherefore, then, is that usual clause (of perfect mind and memory) so duly observed in every testament, if he that doth prefer the will be not charged with the proof thereof? It may be answered that that which is notorious is to be alleged, not proved. And so this being accounted notorious (because where the contrary appeareth not, the law presumeth it) it need not be proved." This doctrine is recognised to its full extent, and affirmed in the cases last above referred to; and the rule is distinctly laid down as a logical conclusion from the presumption in favor of sanity, that "the burthen of proof lies upon the person who asserts unsoundness of mind; unless a previous state of insanity has been established, in which case, the burthen is shifted to him who claims under the will." In referring to the doctrine laid down in 2 *Southard*, 454, that "*after probate*, the sanity of the testator was always to be presumed in favor of the will, the insanity to be proved by him that alleges it," the Court say in

*Sloan vs. Maxwell*, 2 *Green's Ch. R.*, 580, by the words *after probate*, we are to understand after proof of *formal execution.*" These authorities rest upon sound reasoning. They, also, harmonise with the ancient rule of presumption in favor of sanity, and thereby escape the fallacy "of requiring a party to give positive proof of the existence of a fact, which the law presumes, in the absence of all proof."

The practice in this State has been in conformity to these views of the law. The caveators have always taken the position of plaintiffs, and have had the right to open and close the case. *Brooke vs. Townshend, and others*, 7 *Gill*, 24, is conclusive upon this question of practice. In the Court below the caveatees claimed the right of opening and concluding the argument before the jury. The question coming before this Court upon appeal, Mr. Justice MARTIN, in delivering the opinion, says, "the issues in dispute and transmitted to the County Court for the determination of a jury, are predicated on an affirmation of facts, introduced for the purpose of impeaching the will, by the caveators on the one side, and a negation of those facts by the caveatee in his answer. And it appears to us to be perfectly clear, that in a case thus situated, the caveators are to be regarded as the assailants of the will, as the *actors* who originated this proceeding, and who were therefore entitled to be placed upon the record in the attitude of plaintiffs." This case also decides, that the *factum* of the will being conceded by the pleadings, the will must be placed, by the caveators, in evidence before the jury. The Court refrained from expressing any opinion upon the "presumption of its validity," as they considered the question a mere abstract one, in the form in which it was presented by the exception. But the reasoning of the Judge, and the rulings upon the first two exceptions can lead to no other conclusion, than one in favor of the presumption of mental capacity, after the *factum* or execution of a will is admitted, or proved, if put in issue by the pleadings. That the law may be consistent in all its parts, the true doctrine must be, that whenever satisfactory

proof establishes the doing of an act, especially if it conform to the formalities required by law, it must be considered, in the absence of opposing proof, as done by a reasonable and sane man. The very general language used in *Cramer vs. Crumbaugh*, 3 *Md. Rep.*, 501, cannot be taken to control and alter this principle. It is true that it is said in that case, upon the authority of *Mr. Baron Parke*, 1 *Curteis*, 637, (6 *Eng. Eccl. Rep.*, 417,) that the party propounding a will, has the *onus* imposed on him and he must discharge it "by proof of capacity and the fact of execution." But the *quo modo* of proof must be in harmony with other recognised rules and principles. If capacity be established by evidence of a fact from which it is to be presumed, "proof of capacity" has in reality been given; and the *onus* cast upon the party propounding a will is discharged by proof of execution, because that being proved, the presumption of capacity follows. Believing, after a very careful examination, that we are correct in our view of the law upon this question, we are of opinion that there was no error in rejecting the eleventh prayer of the caveators, and in granting the second prayer of the caveatees.

The remaining questions, arising upon the various prayers of the caveatees, which have been excepted to, are readily disposed of by reference to adjudicated cases. The first prayer is fully sustained by the case of *Mason vs. Harrison*, 5 *Har. & Johns.*, 480, and conforms to the views already expressed upon the modification of the caveators' fifth prayer. The fourth, sixth, seventh, eleventh, twelfth and thirteenth prayers, as applicable to the evidence in the record of this case, contain familiar principles of law, so firmly established by numerous and uniform decisions, that it is now too late to call them into question. 1 *Hagg.*, 577; 3 *Ser. & Rawle*, 269; 3 *Wharton*, 137; 22 *Wendell*, 540; 1 *Green's Ch. R.*, 88; 5 *Johns.*, *Ch. R.*, 159; 5 *G. & J.*, 301; 3 *Md. Rep.*, 500; 20 *Md. Rep.*, 387; 1 *Wm. Black.*, 365, 416; 2 *Hagg.*, 211, 558.

*Rulings of the Court below affirmed.*

(Decided 5th February, 1868.)