## JOHN I. GROSS, EXECUTOR OF RACHEL L. GROSS, *vs.* LUCY P. BURNESTON ET AL.

*Wills — Requesting Witnesses to Sign — Caveat — Issues Must be Founded Upon Averments of Petition and Answer—Issue as to Factum of Will.*

Under Code, Art. 93, sec. 310, providing that every will shall be attested and subscribed in the presence of the testator by two or more credible witnesses, it is necessary that a testator shall request the subscribing witnesses to attest his will, but it is not necessary that he should in terms ask them to sign, since other facts may constitute a legal request on his part.

A caveat to a will alleged that the same was not the last will of Rachel G. and that she died intestate. The answer alleged that the paper referred to was in truth the last will of the said Rachel. *Held,*

1st. That this averment and denial raises an issue as to the *factum* of the will.

2nd. That the Orphans' Court properly propounded the following issue for trial by jury: Whether the paper-writing dated, &c., purporting to be the last will of Rachel G. was signed by the said Rachel or some other person in her presence and by her express directions and that H. and A. at her request and in her presence subscribed their names as witnesses thereto.

Upon a caveat to a will the issues sent from the Orphans' Court to a Court of Law for trial should be framed concerning the matter set forth in the petition and answer. Where the averments of a petition attacked the will as a whole and alleged that it was not the will of the testatrix, that she lacked testamentary capacity, and that the will was procured by fraud and undue influence, the Orphans' Court

properly refused to grant issues asked for by the executor, directing the jury to find what part or parts of the will, if any, were procured by undue influence or by fraud, since there had been no allegation that only a part of the will was void on account of fraud or undue influence.

Appeal from the Orphans' Court of Baltimore City. The first issue framed by the Orphans' Court to be tried by jury was as follows: " Whether the paper-writing dated 5th of January, in the year 1897, purporting to be the last will and testament of the said Rachel L. Gross, was signed by the said Rachel L. Gross or some other person in her presence and by her express direction, and that Henry J. Graham and M. Ada Graham at her request and in her presence subscribed their names as witnesses thereto."

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Michael A. Mullin* (with whom was *Joseph C. Mullin* on the brief) for the appellant.

The first issue submits to a jury the question whether the witnesses signed *at the request* of the testatrix, thus submitting an immaterial issue. *Code*, Art. 93, Sec. 310; *Mason* v. *Harrison*, 5 H. & J. 480; *Higgins* v. *Carlton*, 28 Md. 115, 141; *Etchison* v. *Etchison*, 53 Md. 348.

But the Court below committed an error of more importance in ordering any issue *at all* as to the *factum* of the will. There was in fact no such issue between the parties to the cause. " There can be no question of the power of the Court to exercise its judgment in determining what facts were in issue between the parties and material to be submitted to a jury for decision, and to refuse to send issues that were irrelevant and immaterial." *Williamson* v. *Montgomery*, 40 Md. 373; See also *Little Sisters of the Poor* v. *Cushing*, 62 Md. 420. Nowhere in the original pleadings was it ever denied that Rachel L. Gross did actually execute said paper, but there were express affirmations and denials of mental incompetency, ignorance of contents, un-

due influence and fraud.    Is it then permissible for the caveators to submit to a jury a question which they by their silence conceded?

If it be argued that the allegation that the paper-writing "is not the last will and testament of the deceased and that she died intestate," includes the issue that the will was not executed according to law, we answer that it could be as well argued that it includes every issue that could be raised as to its validity.    If by making such an allegation, the caveator is excused from making a specific allegation as to the *factum*, it would be equally unnecessary to allege mental incompetency, fraud or undue influence.    The argument proves too much.    See—*Meyer* v. *Henderson*, 88 Md. 592.

The will is very short and simple, yet it is composed of four entirely distinct parts, being devises and legacies, the subjects and beneficiaries of which are separate and unconnected.    These are :  To Gillingham, a farm ; to Petit, fifty dollars ; to Ennels, a farm ; to the executor, the residue. It may very well be that one or more of these devises were obtained by fraud or undue influence, and the beneficiaries of the others untainted by either.    It may, for instance, appear from the evidence that the devises to Gillingham and Ennels were the long contemplated, free and deliberate act of the testator, taken without consulting the beneficiaries and without their knowledge, while the residuary bequest might be obtained by misrepresentation, undue influence and fraud.    Or, the residuary bequest may be the long contemplated, deliberate, free and uninfluenced payment of a moral obligation, and the devises to Gillingham and Ennels the results of a fraudulent conspiracy to deceive and intimidate the testatrix.    In either case, what verdict could the jury find on the issues of fraud and undue influence proposed by the caveators?

As their finding must be " yea " or " nay " to the entire issue, they would be compelled to take either one of three courses, that is, (1) sacrifice the innocent and defeat the free and deliberate intention of the testatrix, in order to punish

the guilty, or (2) condone the wrong of the guilty and defeat the intention of the testatrix in order to shield the innocent, or (3) in helpless impotence and bewilderment fail to find a verdict. Justice and common sense and the law's desire to effectuate the real intent of a testator alike suggest that such division of the subject be made if allowable by law, and it is now well settled by authority that such a separation of the issues is permissible. *Munnikhuysen* v. *Magraw* 35 Md. 280; *Griffith* v. *Griffith;* 50 Md. 466; *McIntyre* v. *Worthington,* 68 Md. 203; *Fisher* v. *Boyce,* 81 Md. 46.

*Thos. Ireland Elliott* (with whom were *Walraven &* *Schirm* on the brief) for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Orphans' Court of Baltimore City. The order transmitted certain issues to the Court of Common Pleas for trial and refused to send up certain other proposed issues. Objection is made to the first of the four issues which were transmitted, because that issue, as framed, requires the jury to find whether the testatrix requested the witnesses to the will to sign it; and secondly, because the issue, which was one that related to the *factum* of the will, was not raised between the parties to the cause by the petition and answer.

The Code provides: "All devises and bequests of any lands, or tenements or interest therein, and all bequests of any goods, chattels or personal property of any kind * * * shall be in writing and signed by the party so devising or bequeathing the same, or by some other person for him, in his presence and by his express direction, and shall be attested and subscribed in the presence of the said devisor by two or more credible witnesses, or else they shall be utterly void and of none effect." That the testator must in some way request the subscribing witnesses to attest the will is obviously involved in this requirement. The validity of the will is made to depend upon the instrument being attested by two or more credible witnesses, and

it cannot well be perceived how it could be attested at all unless the testator directly or indirectly requested those persons who do attest it to subscribe their names to it as witnesses.. The law throws around testamentary papers the utmost precautions to prevent fraud and imposition, and it would seriously weaken these safeguards if it were held that no request at all or in any form by the testator to the subscribing witnesses were needed.   But it is not meant by this that the testator should *ask* the witnesses to sign, because facts which are sufficient in law to constitute a legal request on his part are all that must be proved.   *Higgins* v. *Carlton and Scaggs*, 28 Md. 140; *Cramer* v. *Crumbaugh*, 3 Md. 501.   Whilst there must be a proper attestation which includes a request by the testator that the witnesses subscribe their names to the will, still the legal question as to what constitutes a sufficient request is left open by the issue, as was done in *Higgins' case, supra,* for the trial Court to define by appropriate instructions.   In the case just referred to the caveators asked by their fifth prayer the following instruction: " Unless the jury believe from the evidence, that the said paper-writing was attested by the subscribing witnesses at the request of the said John Higgins, they must find on the first issue for the caveators.". This prayer was modified by the trial Court, and by the modification the jury were told that if they found certain enumerated facts those facts constituted a sufficient request on the part of the testator.   In reviewing this ruling our predecessors said: " The facts stated by the Court below, in the modification of the fifth prayer, are sufficient in law, if found by the jury, to constitute a legal request by the testator for the subscribing witnesses to attest his will.   The testamentary law of this State does not require that a testator should ask them to attest it. His assent, either express or implied, is sufficient; provided, ' the act be done with his knowledge and not in a clandestine and fraudulent way. '   *   *   *   If the prayer had been granted by the Court, without the qualification an-

nexed, the instruction might have misled the jury, in sup-
posing that the law required the testator to *ask* the witnesses
to sign his will—the word *request* being ordinarily under-
stood in that sense.    The Court was therefore right in
stating facts, in its modification of the prayer, which, if
found by the jury, were sufficient to establish in law the
attestation of this will.    5 *Har. & Johnson*, 480 ; 3 *Md.
Rep.* 501 ; 8 *Md. Rep.* 23.    In *White* v. *British Museum*, 6
Bing. 310, TINDAL, C. J., says, that ' in the execution of
wills as well as of deeds, the maxim will hold good, *non
quod dictum sed quod factum est, inspicitur.*' "

The second objection to the issue is not more tenable
than the first.    The petition which assailed the will dis-
tinctly charged that "the said paper-writing is not the last
will and testament of the said deceased, Rachel L. Gross,
and that she, the said Rachel L. Gross, died intestate."
The answer of the executor denied that Rachel L. Gross
died intestate and expressly averred " that the paper-writing
referred to in said petition is, in truth, the last will and tes-
tament of said Rachel L. Gross."    This averment and the
denial of it raised an issue as to the *factum* of the will ;
and the first issue transmitted was strictly within the con-
tention thus made by the pleadings.    The averment of the
petition and the denial of the answer could not have had
relation to any other subject than the one embodied in the
issue, because each of the other grounds relied on to show
that the paper was not the will of the testatrix was specifi-
cally stated and was exclusive of this question as to the
*factum* of the will.    The other averments involved mental
capacity, and the questions as to whether the will had been
procured by fraud or by undue influence.    Obviously, there-
fore, it was not in the contemplation of any of the parties
to the proceeding that the allegations and denials with
respect to the paper not being the last will of Rachel L.
Gross, had relation to mental capacity, to fraud or to undue
influence ; and there can be no doubt that the issue intended
to be framed to put to the jury the finding of the *factum* of

the will, was the one which was framed and is now objected to.

There was no error committed in rejecting the issues proposed by the executor. These were, first, what part or parts of the will (if any), were procured by undue influence ; and, second, what part or parts of the will (if any), were procured by fraud. There was no averment in the pleadings to found either of these proposed issues on. It was not alleged that part of the will was invalid ; it was assailed as a whole ; and it was not contended by the executor that only part of it was valid, for it was upheld by him in its entirety. There was, therefore, nothing in the pleadings on which to found the issues propounded by the executor. Issues sent from an Orphans' Court to a Court of law for trial " ought to be framed concerning the persons named *and the matters set forth in the petition and answer."* *Richardson* v. *Smith*, 80 Md. 89. " An issue is formed by affirming a matter on one side and denying it on the other. This collision of statement is its very substance and essence." *Little Sisters of the Poor et al.* v. *Cushing*, 62 Md. 420. The record is totally devoid of any allegation that part of the will is void on account of fraud or undue influence. All the averments relate to the whole will and there could not be an issue framed under the pleadings as they stand to submit a question that was not in controversy. It would have been an error had an issue been made up on a subject not contested.

It follows from what has been said that the rulings of the Orphans' Court must be affirmed.

*Rulings affirmed.*

(Decided June 14th, 1900.)