DAVID R. SHANNON *vs.* THE HOWARD MUTUAL BUILDING ASSOCIATION OF THE CITY OF BALTIMORE.

*Homestead or Building Association — Fines for the Non-payment of Dues.*

Where a mortgage given to a Homestead or Building Association by one of its members, recognizes the obligation of the fines which may be imposed upon him by the association, and stipulates for their payment, a Court of Equity, when called upon to foreclose the mortgage *ex parte* or otherwise, ought to allow in the ascertainment of the indebtedness of the mortgagor, such reasonable and legal fines as may have been incurred by him, by his own consent, when he has been in default.

Such fines do not come within the principle which forbids a Court of Equity to lend its assistance to enforce the payment of fines, penalties or forfeitures.

A member of a Building Association having received an advance of $1,350, on his nine shares of stock, executed to the association a mortgage, in which he covenanted to pay the association or its assigns the weekly sum of $4.50, until the association should have sufficient funds on hand to pay the holders of any unredeemed share of its stock the sum of $250, clear of all losses and liabilities; to pay the interest on the said sum of $1,350 weekly, from the date of the mortgage; and also to pay all fines that might be imposed on him by the mortgagee, in accordance with its Act of incorporation. Section 3, of Article 2, of the by-laws of the association provided as follows: "If any stockholder shall neglect or refuse to pay his weekly dues as often as the same shall be payable as aforesaid, every stockholder so neglecting or refusing, shall forfeit and pay the additional sum of ten cents for every share of stock by him held, for every such weekly neglect or refusal, to be charged with the weekly dues." Upon petition by the association alleging default in the mortgagor to comply with the conditions in the mortgage, an *ex parte* decree for the sale of the mortgaged premises was passed. In determining the amount properly due by the mortgagor, it was HELD:

1st. That the weekly instalments and weekly interest constituted but one debt; and the weekly interest ought to be included in the weekly dues.

2d. That under the foregoing by-law of the association, only one fine was authorized for the non-payment of each instalment of the weekly dues—that is upon the default of the mortgagor in the payment of the weekly due, he owed as a fine, ninety cents, ten cents on each of his nine shares.

3d. That because the weekly instalment remained unpaid for sundry weeks, the by-law did not authorize an additional fine of ninety cents for every week it remained unpaid.

APPEAL from the Circuit Court of Baltimore City.

On the 1st of June, 1868, the appellant executed to the appellee, a mortgage of a leasehold interest in a lot of ground situated on the north side of Hollins street in the city of Baltimore. The mortgage stated that: "Whereas the said mortgagor being a member of the said body corporate, has received therefrom an advance of thirteen hundred and fifty dollars on his nine shares of its stock. Now, therefore, this mortgage witnesseth, that in consideration of the premises and of one dollar, the said David R. Shannon doth grant unto the Howard Mutual Building Association of the city of Bal-

timore, and its assigns, all that lot of ground situate and lying in the city of Baltimore, and described particularly in a mortgage deed executed in favor of the Mechanics' Mutual Building Association of the city of Baltimore, by said David R. Shannon, &c.  *  *  *  *  *

"And the said David R. Shannon, for himself, his heirs, executors, administrators and assigns, covenants with the said association and its assigns to pay and perform as follows— that is to say: To pay the mortgagee or its assigns the weekly sum of four dollars and fifty cents ($4.50) on every Thursday, until the time arrives when the said body corporate shall have sufficient funds on hand to pay the holders of every unredeemed share of its stock the sum of $250, clear of all losses and liabilities; to pay all ground-rents and taxes for which the property hereby mortgaged may become liable, when payable; to pay the interest on the said sum of $1,350 weekly from the day of the date of these presents; and also to pay the tax on the mortgage debt hereby created; also to pay all fines that may be imposed on him by the said mortgagee, in accordance with its acts of incorporation, and to keep the improvements on the said ground fully insured from loss by fire, for the use of the mortgagee; all of which payments and covenants shall continue in force until the said body corporate shall have sufficient funds on hand to pay the holders of every unredeemed share, above all losses and liabilities, the sum of $250, and the said corporation shall, by the terms of its act of incorporation, have become extinct."

"And the mortgagor consents that a decree may be passed for the sale of said property, (the sale to take place after a default in any of the conditions of this mortgage shall have continued three months,) under the provisions of the sections 782 to 792, inclusive, of Article 4 of the Public Local Laws of the Maryland Code, or any supplement thereto; or this mortgage may be foreclosed under any law or laws of said State of Maryland, intended to facilitate the regular or extrajudicial proceedings on mortgages, as fully and in the same

manner as if special assent and powers were hereby given and granted."

On the 12th of March, 1869, the appellee filed its petition in the Court below, praying a decree for the sale of the mortgaged property, pursuant to the assent given in the mortgage, and the Acts of Assembly in such cases made and provided— the mortgagor having failed to comply with the conditions and agreements contained in the mortgage. With this petition was filed the mortgage and the following statement of the claim of the mortgagee, with the affidavit annexed, of the financial secretary of the association, " that the above account is just and true as stated, and that the said association hath ,not received, directly or indirectly, any security or satisfaction for the same, or any part thereof, excepting the mortgage aforesaid and the credits given in said account."

BALTIMORE, *March 11th*, 1869.

MR. DAVID R. SHANNON,

To the Howard Mut'l Building Association, DR.

| | | |
|---|---:|---:|
| To 290 weeks' dues under his mortgage to the Association, (on 9 shares,) a. 4.50 | $1,305 | 00 |
| To 290 weeks' interest, 1.56 | 452 | 40 |
| | $1,757 | 40 |
| Rebate 145 weeks' interest | 292 | 90 |
| | $1,464 | 50 |
| To arrearages for dues, interest and fines on same... | 557 | 56 |
| | $2,022 | 06 |

The Association estimated to run 7 years.

The Court, (PINKNEY, J.) on the same day passed a decree for the sale of the mortgaged premises. On the 23d of April, following, the appellant filed his petition, stating that he had

offered to pay to the appellee his back dues in arrear, and any reasonable fines thereon, which the appellee refused to take, requiring him to pay dues and fines as stated in its account, amounting to $557.56; that the amount of his dues in arrear did not exceed $150, even with any reasonable fines added thereto, and that it was unconscionable that he should be required to pay upon so small an arrear of indebtedness, the large sum of $400, and more, as a penalty; he therefore prayed that the matter might be referred to the auditor to state an account, and that he might be allowed to bring into Court such amount as the Court should determine to be due to the appellee, and that the appellee be required to take the same, &c., and that the decree be stayed until then. An order was passed assigning a particular day for the hearing of the petition, with leave to either party to take testimony, &c. A commission was issued and testimony was taken, and on the 13th of April, 1870, the Court referred the cause to the auditor to state an account of the indebtedness of the appellant to the appellee, from the evidence in the cause, and such other proof as might be adduced before him upon proper notice. On the 9th of July, 1870, the auditor filed his report and two statements, marked No. 1 and No. 2, respectively, showing the views of the complainant and the defendant.

Statement No. 1 represented the views of the complainant and agreed with the statement which it filed on the 12th of March, 1869, except that interest was allowed the defendant on the two payments made by him from the times they were respectively made, thus reducing the sum claimed by the association to $2,021.48.

Statement No. 2, gave the defendant the benefit of his just payment by applying so much of it as would pay the dues of the 15th of October, 1868, and the fines which had been incurred on that amount, and also on the interest to the time of that payment, to wit: on the 5th of November, 1868; and also excluding from the weekly dues the weekly interest charged from the 15th of October, 1868, to the 11th of

March, 1869, assuming that it had already been charged for all the time for which the defendant was liable.

The defendant excepted to the auditor's statements for the following reasons:

1st. Because of the allowance of costs against the defendant.

2d. Because of the allowance of interest against the defendant.

3d. Because of the allowance of fines against the defendant as being unconscionable and not covered by the mortgage.

The following sections of Article 2 of the By-Laws of the appellee, referred to in the argument below, will contribute to an understanding of the questions decided.

Sec. 2. Every stockholder, for every share of stock that is held in this association, shall pay the sum of fifty cents on subscribing, and fifty cents weekly thereafter, to the treasurer, or such other person or persons as shall, from time to time, by the laws or regulations of the association, be authorized to receive the same, until each unredeemed share of said stock shall be worth, in cash, $250, and there shall be funds enough in the association to pay that amount to the holders of said unredeemed shares, after paying all debts of the association. The directory shall then proceed to pay, satisfy and discharge, first, debts and liabilities of the association, and then pay over to the owner of each unredeemed share an equal dividend of all sums on hand, and which shall afterwards be received, until the whole shall be divided; and from the time of the commencement of the payments of such dividends, no further weekly dues or interest shall be payable, except that all arrears shall be fully paid up; and the association shall deliver to each morgagor who has fully complied with the conditions of his mortgage, a discharge thereof, and all papers connected therewith. After the performance of the foregoing duties, this association shall cease to exist, and it shall not be sooner dissolved; nor shall this Article be altered, amended or repealed, without the consent of four-fifths of the voting shares belonging to this association.

Sec. 3. If any stockholder shall neglect or refuse to pay his weekly dues as often as the same shall be payable as aforesaid, every stockholder so neglecting or refusing, shall forfeit and pay the additional sum of ten cents for every share of stock by him held, for every such weekly neglect or refusal, to be charged with the weekly dues.

Sec. 5. If any member of this association, having taken a loan, shall neglect or refuse to pay his weekly interest, he shall forfeit the additional sum of ten cents on each share of stock redeemed, to be charged and collected with the weekly dues.

On the 25th of September, 1871, the Court passed an order overruling the exceptions of the defendant, and ratifying Statement No. 1 of the auditor, and directing the defendant to pay to the complainant its costs incurred in the proceedings. From this order the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON MILLER and ALVEY, J.

*Samuel Snowden,* for the appellant, argued

That the order of the Circuit Court ought to be reversed, for the following reasons:

1st. That no corporation can impose a penalty for violation of a by-law without express power to do so. *Kirk vs. Nevill,* 1 *Tenn.,* 118.

The appellee was incorporated in August, 1867, and therefore comes under the provisions of Article 26 of the Code of Public General Laws. By section 35, such corporations are authorized to redeem their stock in advance, and to receive from such redeemer security for the payment " by such member, of the *unpaid instalments* to be paid on the share or shares of its stock so sold or redeemed, *together with interest* at the rate of six per cent. per annum, and *subject to such fines and penalties for the non-payment thereof* as may be prescribed in the articles of association." Evidently meaning, that there

should be but one fine for the non-payment of the instalment which included dues and interest. The by-law marked section 5 is therefore unauthorized by the law under which the appellee is incorporated, and is consequently void, as it inflicts a penalty for its violation.

The true construction of the by-law marked section 3 is that only one fine can be levied for the default in the payment of the weekly instalment, but the association have construed it to authorize a fine for each week, so long as the default might continue. By this method of calculation, assuming that section 5 is a valid by-law, the fines on a loan of $1,350 is made to amount to the enormous sum of $425.24 in the short space of five months. Such a rule cannot be sustained by any reasonable construction of the by-law.

2d. That even if such fines are authorized by the by-laws, they cannot be enforced in a Court of Equity, which will not lend its aid to enforce forfeitures or penalties. *McKim vs. The Whitehall Co.*, 2 *Md. Ch. Dec.*, 516; *Story's Eq. Pl.*, sec. 521; *Story's Eq. Jur.*, sec. 1319.

3d. That there is not a sufficient reference in the mortgage to the by-laws, so as to authorize the Court to look to them in the construction of the mortgage, and therefore no fines can be allowed. *Robertson vs. The American Homestead Association*, 10 *Md.*, 409.

4th. That the rule laid down in Robertson's case is only applicable to cases where there is a *sale of the property*, and it was therefore improperly adopted as the basis of the statement of the account in this case. *Oak Cottage Building Asso. vs. Eastman & Rogers*, 31 *Md.*, 556.

*John Small, Jr.*, for the appellee.

STEWART, J., delivered the opinion of the Court.

An *ex parte* decree had been passed by the Circuit Court of Baltimore City, at the instance of the appellee, The Howard Mutual Building Association, for the foreclosure of the mort-

gage of the appellant, a member of the society, by reason of his alleged default.

The appellant filed a petition, representing that the account exhibited with the application for the decree was erroneous, and that he had offered to pay the true amount due, and praying to have the matter referred to the auditor to state an account of his indebtedness, and to be allowed to bring the amount he owed into Court, and that the decree be stayed.

The Court ordered a day for the hearing, with leave to the parties to take testimony. Upon the return of the commission, with the testimony taken, the cause was referred to the auditor to state an account of the indebtedness of the appellant. The account was accordingly made out, and excepted to by the appellant; his exceptions were overruled, and the account ratified, and he has appealed from that decision.

He complains that he is overcharged, and the main question in dispute is, as to the correctness of the auditor's account. He also alleges that he has made a sufficient offer to pay what was due, either upon his application to be released from the mortgage; or from the payment of the amount of the weekly dues, interest and fines remaining unpaid, and claims the benefit of having tendered himself ready to pay each on different occasions. A point is also made in the argument of the case, that a Court of Equity ought not to afford relief to the appellee in the collection of any fines that may have been imposed.

By the 16th Article, 1st and 2d sections, of the association, it is provided that any member may obtain a release of his mortgage by paying back the difference between the dues paid and the amount borrowed, together with a bonus, graduated by the number of years it has run, and before the unredeemed shares are worth $250; and upon the release being effected, he ceases to be any longer a member.

The mode of settling the indebtedness under such circumstances is explained in the law of the *Oak Cottage Building Association vs. Eastman & Rogers,* 31 *Md.,* 556.

It is alleged by the appellant that he made application to be released, and tendered himself ready to comply with the required terms, and was refused by the appellee.

This is denied by the company. The proof is so conflicting, that the tender cannot be considered as made out; whilst, in actions at law, to constitute a legal tender, considerable formality is required, and the money must be actually produced, unless the claimant dispense with its production, by express declaration or other eqivalent act, as if a party declare beforehand, that if tender is made, it will not be accepted, that will dispense with a formal tender; *Buel vs. Pumphrey,* 2 *Md.,* 268; yet such strictness is not necessary, in cases of this sort, to be determined by the principles of equity and good conscience.

The application to be released, and an offer to comply in good faith, with the ability to pay whatever might be due, where the party did not know the precise amount, and sought to ascertain in a reasonable way from the company, and the officer of the company, in charge of the books and entries, shewing the state of the account, could furnish the proper information, and refuses or omits to do so, without justifiable excuse, would have constituted a sufficient tender, if such a state of things had been clearly proved. See *Smoot, et al. vs. Rea & Andrews,* 19 *Md.,* 398.

The inexcusable refusal or omission of the officer, in cases where he could furnish the desired information sought by an applicant in good faith, would excuse the formal tender, and subject the company to the consequences of a rejection of the proposition to settle. It seems, however, that the appellant waived his offer to be released from the mortgage entirely, according to the 16th Article, and afterwards proposed merely to settle the balance due on account of the weekly instalments, the interest, and all legitimate fines incurred by his default, but in regard to this offer there is the same contrariety of testimony as in the former application, and the same construction as to the matter of tender is applicable, and it is not satisfactorily proved.

In regard to the question that a Court of Equity does not enforce the payment of penalties and forfeitures, according to the principle regulating its jurisdiction, this is true in cases where the doctrine is applicable. Where, in strictness, nothing but forfeitures and penalties are sought to be claimed and enforced in a Court of Equity, it will not lend its aid for their collection, but the parties must resort to the Courts of Law for the purpose.

The sum stipulated to be paid by a member of a building association, under by-laws or regulations authorized by its charter, for a default in settling his weekly dues, is not such a forfeiture, but is simply an amount conventionally due upon the accruing of the weekly instalment, and the failure to pay it accordingly. It is in the nature of liquidated damages, agreed to be paid for the non-performamce of a promise or covenant; and where they are not unconscionable or disproportioned to the exigency of the case, a Court of Equity will award their payment, more especially when incidentally involved in a matter confided to its peculiar jurisdiction and control.

From the character of these building associations, the imposition of adequate fines, as agreed upon by the by-laws, is justified in order to prevent default in the punctual payment of the weekly dues, upon which the success of the company depends; or in case of default, that some reasonable equivalent for the consequent damage sustained, may be provided.

The law authorizing the formation of the company, expressly provides for the imposition of such fines, and the mortgage given by the appellant recognizes their obligation, and stipulates for their payment; and the Court of Equity is required, where a case occurs justifying its interposition, to foreclose the mortgage *ex parte* or otherwise, to allow in the ascertainment of the indebtedness of the party, such reasonable and legal fines incurred by the party, by his own consent, where he has been in default. See 2 *Story's Eq. Juris.*, sec. 1318.

We see no difficulty in a Court of Equity compelling a party, under such circumstances, to meet all his engagements, where it is authorized to exercise its jurisdiction over the subject matter of the mortgage. Without the power to collect such fines through a Court of Equity, where the mortgage is enforcible, the anomaly would be presented of compelling the company also to resort to a Court of Law for the recovery of the fines.

The successful management of such building associations, chartered by the laws of the State, and intended for useful purposes, would in a great measure be defeated or seriously jeopardized, if a Court of Equity should refuse to entertain jurisdiction and give relief in such cases. Such fines do not come within the principle forbiding a Court of Equity to lend its assistance for the simple purpose of the recovery of fines, penalties and forfeitures.

Mortgages of the character of the one in question are peculiar, in not being for the re-payment of the sum advanced with interest, but for the payment of weekly instalments, including weekly interest and fines, for the omission to make such payment; and a rule was laid down in *Robertson vs. The American Homestead Association*, 10 *Md.*, 398, for the ascertainment of the sum due upon such a mortgage, in the event of a sale of the property, for the purpose of foreclosing the mortgage, and terminating the engagement of the member to the association. Upon its accomplishment, all relations between the association and the member are as effectually dissolved, as if he had made application to be released under the 16th Article, 1st and 2d sections—and compliance therewith. The 35th and 36th sections of the 26th Article of the Code recognize the power thus to terminate the relations of the parties, and a contract accordingly between the member and the association is fully authorized.

The immediate question in that case, as well as in this, was not to ascertain the amount due upon the mortgage, regarding its final and complete foreclosure by a sale of the mortgaged

property and the dissolution of the relation between the member and the association; but upon the basis of their further continuance, notwithstanding his existing default, by his paying up his indebtedness for the weekly instalments, interest and fines, in which he had been delinquent, and to ascertain the true amount thereof, before any sale, so that he might have the opportunity to pay the same and save the necessity of a sale of the property—the decree merely standing, in the meantime, as a security for future instalments and liabilities.

This indebtedness is made up partly by the weekly dues, and the interest and the fines, if any, imposed by the society, in accordance with its by-laws and Act of incorporation.

The only dispute, in this case, so far as the indebtedness of the appellant is concerned, is in regard to the amount of the fines imposed, and claimed by the company, the mortgagee, and whether they are authorized by its by-laws and Act of incorporation.

Its solution depends upon the legal force and effect of the by-laws of the company and their conformity with the law authorizing the incorporation, together with the provisions and stipulations of the mortgage in question.

By the 35th sec. of Art. 26 of the Code, under which the company was chartered, it is authorized to advance to any member the sum which he would be entitled to receive upon the dissolution of the company, or it may purchase the shares of the stock of any member, and on payment of the sum agreed upon, receive from the member, security for the payment of the future instalments on the shares sold or redeemed, together with interest on the sum, at such times and subject to such fines and penalties for the non-payment thereof, as may be prescribed in the articles of association.

The 36th sec. provides that the payment of the instalments, with interest, and all fines and penalties incurred in respect thereof, shall be secured by mortgage, &c.

It is under the authority of these sections, the mortgage in this case was taken, and the money thereupon advanced to

the appellant, and the mortgage can only be operative to the extent of its conformity therewith.

We discover no departure from the requirements of the law in the mortgage, but there is nothing in the sections of the law aforesaid to warrant the corporation in the enactment of the 5th sec. of Art. 2, and the imposition of a distinct fine for the non-payment of the weekly interest.

The weekly instalments and weekly interest constitute but one debt, and the weekly interest, according to our construction of the terms of the law, ought to be included in the weekly dues, in sec. 3 of same Art. if a fine is to be imposed or paid, for its non-payment, as well as the weekly instalment of the principal debt—that is, the portion of the principal, properly so called, payable weekly, and the proportional interest, weekly payable, constitute the weekly instalment, and make up the weekly indebtedness, which, if not paid punctually, subjects the party to a fine, if the company think proper so to determine by its by-laws.

There is no reason nor authority, under the law, for the sub-division of the principal and interest, and separate and independent by-laws, imposing distinct fines for the non-payment of each.

The fines, therefore, undertaken to be imposed upon the appellant under the 5th by-law, in regard to default in the payment of the weekly interest, and charged to the appellant in the account of the auditor, and confirmed by the order of the Court, are unauthorized and erroneous, and ought not to have been charged and allowed.

Upon a fair construction of by-law, sec. 3 of Art. 2, we think but one fine is authorized for the non-payment of each instalment of the weekly dues—that is, upon the nine shares, upon his default in the weekly payment, the appellant owed ninety cents, equivalent to ten cents on each share as a fine. Because that weekly instalment remained unpaid for sundry weeks, the by-law does not authorize an additional fine of ninety cents for every week it may remain unpaid.

The appellant was answerable for so many fines of ninety cents or ten cents on each share, as there were weeks, each weekly instalment accrued, and was not paid up to the time of the decree.

The order below must be reversed and the cause remanded in order that the account against the appellant may be corrected conformably with this view.

Upon the payment, of whatever amount may be so ascertained, by the appellant, and the costs of the decree, as he was in default (all other costs to be paid by the appellee,) the sale of his property mortgaged, will be prevented, and the decree rendered will stand as a security for his future liabilities.

Failing to do this, and the property has to be sold in pursuance of the decree, the rule prescribed by this Court in the case of *Robertson vs. The American Homestead Asso.*, 10 *Md.*, 397, must govern; the indebtedness of the appellant under the default in the payment of the weekly instalment, to be computed according to the views we have expressed in regard thereto.

*Order reversed and*
*cause remanded.*

(Decided 20th June, 1872.)