WILLIAM H. OSBORN *vs.* DANIEL COOK & others.

A will, in the handwriting of the testator, and signed by him in the presence of three competent witnesses, who attest the same at his request, and in his presence, is well executed, although the testator does not declare to the witnesses, and they do not know, that it is his will.

APPEAL by one of the executors named in the will of Nathan Cook, from a decree of the judge of probate, disallowing said will, on the ground that the testator did not declare to the subscribing witnesses, at the time of their attestation, that it was his will.

The paper offered for probate, which was wholly in the testator's handwriting, commenced thus: "Know all men by these presents, that I, Nathan Cook, of Salem, county of Essex, state of Massachusetts, merchant, while I have strength and capacity so to do, do make and publish this my last will and testament, hereby revoking all wills by me at any time heretofore made;" and concluded as follows: "In witness whereof, I have hereunto set my hand and seal this thirteenth day of April, 1852." There was no attestation clause, except the single word "witness," preceding the signatures of the witnesses. The testator signed this instrument in the presence of two of the witnesses, and pointed out his signature to the third witness; and each of the witnesses signed it as a witness, in the presence of the testator, and at his request. But the testator did not declare to either of the witnesses that it

---

was his will, nor did either of them know or suspect the nature of the instrument.

The case was submitted to the court upon these facts; and was argued in writing by

*S. H. Phillips*, for the appellant.

*N. J. Lord*, for the appellees.

THOMAS, J.    The only question raised upon the appeal and the agreed statement of facts is, whether the instrument was duly executed.

This question must be determined by a just construction of the provision of the Rev. Sts. *c.* 62, § 6, which is, " No will, excepting nuncupative wills, shall be effectual, unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested and sub-scribed in the presence of the testator by three or more competent witnesses."

This will was in writing, signed by the testator, and attested and subscribed in his presence by three competent witnesses. It was written by the testator. He knew, therefore, if of sound mind, what he signed, and what he asked the witnesses to attest.    The calling upon witnesses to attest his execution of an instrument, whose character and contents he well knew, was in effect a declaration that the instrument he had signed, and his signature to which he desired them to attest, was his act, though the character and contents of the instrument were not disclosed to them.    It was as if the testator had said, " This instrument is my act; it expresses my wishes and purposes; and, though I do not tell you what it is, I desire you to attest that it is my act, and that I have executed and recognized it as such in your presence."    We think all the requirements of the statute are met and satisfied.    No formal publication of the instrument, no declaration of its contents, or of its nature, is in terms required.    The legislature have prescribed certain solemnities, to be observed in the execution of a will, that it may be seen that it is the free, conscious, intelligent act of the maker; but they have not prescribed that he should publish to the world or to the witnesses, what is in the will, or even that it is a will.

**45***

A usage has doubtless existed, to some extent, in the probate courts, to inquire of the subscribing witnesses, whether the testator declared the instrument he had signed to be his will; and such a declaration frequently makes part of the clause of attestation ; but such declaration is not necessary. There may exist very excellent reasons why the testator may not wish to disclose, and why the law should not require him to disclose the fact that he has made a will at all; either, as Swinburne says, " because the testator is afraid to offend such persons as do gape for greater bequests than either they have deserved, or the testator is willing to bestow upon them ; (lest they, peradventure, understanding thereof, would not suffer him to live in quiet ;) or else he should overmuch encourage others, to whom he meant to be more beneficial than they expected ; (and so give them occasion to be more negligent husbands or stewards about their own affairs, than otherwise they would have been, if they had not expected such a benefit at the testator's hands ;) or for some other considerations." Swinburne on Wills, 27.

It is not easy to trace the origin of the belief which, we are aware, is quite prevalent, of the necessity of some formal publication of a will, or declaration by the testator that the instrument is his last will and testament; but, as a question of principle or of authority, it is now settled, that such publication or declaration is unnecessary.

In the case of *Wyndham* v. *Chetwynd,* 1 Bur. 421, Lord Mansfield says, " Suppose the witnesses honest, how little need they know ; they do not know the contents ; they need not be together ; they need not see the testator sign (if he acknowledges his hand, it is sufficient) ; they need not know it is a will; (if he delivers it as a deed, it is sufficient.") In *Bond* v. *Seawell,* 3 Bur. 1775, Lord Mansfield says : " It is not necessary that the testator should declare the instrument he executed to be his will." And *Trimmer* v. *Jackson,* in the King's Bench, reported in 4 Burn's Eccl. Law, (9th ed.) 102, was a case where the witnesses were deceived by the execution, being led to believe, from the words used by the testator, that it was a deed, and not a will; and it was adjudged a

sufficient execution. See, also, *Wallis* v. *Wallis*, 4 Burn, 100. In *Moodie* v. *Reid*, 7 Taunt. 361, chief justice Gibbs says: "A will, as such, requires no publication ; be publication what it may, a will may be good without it."

In the more recent case of *White* v. *Trustees of the British Museum*, 6 Bing. 310, it was held that a will was sufficiently attested when subscribed by three witnesses, in the presence and at the request of the testator, although none of the witnesses saw the testator's signature, and only one of them knew what the instrument was. Chief Justice Tindal treats the law as fully settled, that a bare acknowledgment by the testator of his handwriting, is sufficient to make the attestation and subscription of the witnesses good within the statute, although such acknowledgment conveys no intimation whatever, or means of knowledge, either of the nature of the instrument, or the object of signing. See, also, *Wright* v. *Wright*, 7 Bing. 457 ; *Johnson* v. *Johnson*, 1 Cr. & M. 140.

In *Ilott* v. *Genge*, 3 Curteis, 181, Sir Herbert Jenner Fust, referring to the case of *White* v. *Trustees of British Museum*, says: "This is a determination, that where a testator had written a will himself and signed it, and produces that will, so signed, (for that is a point never to be lost sight of,) to witnesses, and desires them to sign their names, that amounts to an acknowledgment that the paper signed by them is his will, and the instrument is complete for its purpose ; it is acknowledged by the testator to be his will." It would be more exact to say, the instrument is acknowledged to be his act, which, upon production, is found to be his will.

In our own commonwealth the decisions lead to the same conclusion. In the case of *Swett* v. *Boardman*, 1 Mass. 258, relied upon by the appellees, the marginal note of the reporter is calculated to mislead. The case was decided, and rightly, upon the ground that the testator did not know he was executing his will. Sewall, J. says : "I do not find any cases which have been decided, expressly determining what amounts to a publication. But there must be proof that the person knew the instrument to be his will ; that he intended it as such. In the case now under consideration, there is no evi·

dence, except the signature of the deceased, of these facts. I do not think that any particular ceremony of publication is necessary, or material; but the deceased ought at least to have known and understood that he was executing his will." Sedgwick, J. places the decision upon the same ground; but says: " It ought at least to appear that the person knew he was executing his will, and that he communicated that fact to those who were called to attest the same as witnesses; and this is necessary to prevent imposition, from the situation in which persons frequently are at the time of executing these instruments." This point does not seem necessary to a determination of the case, or to be in harmony with the authorities; and the reason of it would not apply to the case of a will written by the testator himself. Dana, C. J. puts the decision upon the same ground—that there was not a particle of evidence that the testator knew he was making a will.

The more recent cases, *Dewey* v. *Dewey*, 1 Met. 349, and *Hogan* v. *Grosvenor*, 10 Met. 54, recognize and adopt the principles stated in the case of *White* v. *Trustees of British Museum.* In *Hogan* v. *Grosvenor*, Hubbard, J. said: " We consider the law as settled, that the testator need not execute the instrument in the presence of the witnesses; that they need not sign in the presence of each other; and that all which is required is, that the testator shall see their attestation, or be in a situation where he can see it. His acknowledgment that the instrument is his, with a request that they attest it, is sufficient."

The doctrine of these cases covers the ground of this. If any declaration is necessary, it requires no set form of speech, indeed, no words; it may be done by acts, as well as words. *Non quod dictum, sed quod factum est, inspicitur.* And the presentation of the instrument, written by the testator himself, and bearing his signature, to the witnesses, with a request for them to attest it, was sufficient.

*Decree of court of probate reversed.*