(Decided 22nd of May, 1873.)

---

## THOMAS LISTER vs. THE LOG CABIN BUILDING ASSOCIATION.

*Building Associations—Prepaid and Deferred Shareholders— Mortgage debts for Prepaid shares, not assets for the liquidation of Deferred shares.*

The charter of a building association provided for the payment of weekly dues by its shareholders until each share should attain a fixed value.   The members had the option of having their shares *prepaid* on certain terms, by giving mortgages on real or leasehold estate, conditioned to pay the weekly dues and fines and interest on the money advanced; or of having the payment of

their shares *deferred* until the association should be in condition to pay each *deferred* shareholder a fixed sum' per share; at which time the association was to be dissolved, the mortgages against the *prepaid* shareholders released, and the *deferred* shareholders paid the face value of their shares, together with an equal proportion of any surplus profits on hand. A bill having been filed by a *deferred* shareholder alleging that the association was in condition to be dissolved, and praying that it be restrained from further collecting dues from him, and for the appointment of a receiver, it was HELD :

1st. That the mortgage debts of the prepaid shareholders were not assets to be applied, with the sum arising from the net revenues, to the satisfaction of the claims of the deferred shareholders.

2nd. That all the members of the association, including those who had not accepted loans, were obliged to pay their respective weekly dues until the revenues of the association should be sufficient to pay the deferred shareholders, and that the mortgages, during their existence, were only a source of revenue.

APPEAL from the Circuit Court of Baltimore City.
The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON and ALVEY, J.

*William H. Cowan*, for the appellant,
Cited *Farmer vs. Smith*, 4 *H. & N.*, 202 ; *Sparrow vs. Farmer*, 26 *Beav.*, 519 ; *Handley vs. Farmer*, 29 *Beav.*, 362 ; *Doncaster Perm't Build. Soc.*, 3 *Eq.*, 158, (*Law Rep.*) ; *Robertson vs. Am. Homestead Ass'n*, 10 *Md.*, 397.

*Howard Edgar Johnson* and *Edward Otis Hinkley*, for the appellees,
Cited *Robertson vs. American Homestead Ass'n*, 10 *Md.*, 397 ; *Shannon vs. Howard Bldg. Ass'n*, 36 *Md.*, 383.

STEWART, J., delivered the opinion of the Court.
The appellant, by his bill, filed in the Circuit Court, amongst other things, alleges that the Log Cabin Build-

Lister *vs.* Log Cabin Building Association.

ing Association, of which he is a member, in disregard of its duty, insists upon his continued payment of his weekly dues, and its right to impose fines upon him, in case of his refusal.

He further alleges, that by the terms of the Association he is entitled to his final distributive portion of the assets thereof; and that the company is in a condition to close its affairs, in pursuance of the articles regulating its management and providing for its dissolution. The bill seeks to restrain the Association from any further collection of weekly dues from him, or the imposition of fines for their non-payment, and to compel it to pay him, what he alleges is, his rightful share of its assets. For this purpose he prays that a receiver may be appointed by the Court to settle up its affairs.

The Association, by its answer, on the contrary, denies the right of the complainant to final payment of his share, and that it is in such condition as to authorize it to terminate its affairs ; and claims the right to exact from the complainant the payment of his weekly dues and to impose the appropriate fines for any default in their non-payment.

The only material questions involved in these issues are, whether the Association has authority to claim weekly dues from a member who has not accepted a loan of money from the company, in exchange for all other rights to which he might otherwise have been entitled ? and whether the Association, according to the terms defining its operations, and providing for its duration and dissolution, is in a condition to terminate its existence, and to make distribution of its assets?

Proof was taken as to the character and extent of its operations and assets, and upon the hearing the Circuit Court dismissed the bill. From our examination of the proceedings, including the exhibits, and copy of the articles of association, and the testimony taken, we think no error was committed in the dismissal of the complaint.

The articles of the Association are few and general, not detailed and specific; leaving much to construction; but they are quite sufficient to shew their purport and effect, and the duties of the Association, and the relative rights and obligations of the members, to enable us to dispose of the questions involved in this case.

The 1st article and 1st section of the Association is declaratory of its title and objects, and professes to have in view, as its chief purpose, the accumulation of a fund from the savings and deposits of the members, to enable each one to purchase real and leasehold property.

The 2nd and 3rd sections of same article limit the number of shares and fix the value of each share.

The 9th article provides that each shareholder shall be entitled to the sum of $112, in full settlement, and authorizes its payment upon the terms prescribed; and when accepted, the shareholder thus drawing his share in advance, is precluded from any distributable portion of the surplus profits upon the dissolution of the company.

By this article provision is also made for the loan of any funds on hand, to a member, preferring prepayment of his share, which it seems the Association considered a valuable privilege. Each shareholder is secured a chance of having his share paid in advance, by becoming a borrower of the funds applicable to such purpose, upon the terms prescribed.

But it is a part of those terms that the shareholder thus settled with, shall, notwithstanding, pay his weekly dues, with the interest on the money thus drawn, until each member shall have received his share; or the money drawn, $112 per share, be returned.

He is required to execute a mortgage, not for the repayment of the money drawn, but appropriate to the responsibilities incurred, and adequate to secure the weekly payments, for the time specified; when his payments are to cease, and the mortgage be released.

The mortgage is not for the repayment of the sum advanced, but for the payment of the weekly installments and performance of the other covenants. According to its terms, payment can only be coerced to that extent, if there is no default; and it is to be released whenever the funds of the Association enable those who have not borrowed, and thus drawn their shares in advance, to receive their portion, according to the provisions of the 17th article, however much of the principal sum advanced may appear to be due. It is executed in pursuance of the provisions of the 9th article, and is payable and releasable, according to its tenor and effect, that is, it is payable in installments, until the time arrives when the body corporate, the respondent, shall have sufficient funds to pay the holders of every unredeemed share of its stock the sum of $112, clear of all losses and liabilities, and until the corporation shall become extinct—it is releaseable then, as provided by the 17th article. The mortgagor may obtain a release sooner by compliance with the 15th article—such is the peculiar character of the mortgage given by the borrowing member, and it is unlike the ordinary mortgage for the payment of a specific sum of money. *Robertson vs. Amer. Homestead Ass'n*, 10 *Md.*, 397; *Shannon vs. H. B. A. Ass'n*, 36 *Md.*, 394.

All the members, including those who have accepted a loan and those who have not, are obliged to pay their respective weekly dues, and upon the punctual discharge of that duty the success of the Association mainly depends.

By the tenth Article, a fine is authorized to be imposed for the non-payment of the weekly dues, upon the defaulting members, without discrimination.

The shareholders are not described in the Article as the "redeemed" and the "unredeemed;" but the language of the mortgage characterizes the mortgagor as "redeemed,"—as we understand the relative position of the

two classes of members, they might perhaps be better designated as the "advanced," or prepaid, and the "deferred," or unpaid shareholders. They are all continuing members, however classified, until the Association is determined, unless they cease to be so, in pursuance of the Articles.

The advanced or "prepaid" members are obliged to pay the interest on the money advanced, besides their weekly dues—they have not ceased to be members, by the prepayment, but continue to hold an interest in the management and success of the Association, as upon that depends their earlier relief, not only from the payment of the weekly dues, but their final release from their mortgages.

The unpaid members are not absolved from the punctual payment of their weekly dues. They are entitled to any *residuum* of profits, the exclusive interest in which has been devolved upon them, by virtue of the contract, with the prepaid members, through the act of the company, furnishing the equivalent consideration.

Both are interested, and under mutual obligation to contribute to the accumulation of the common fund, by the payment of their weekly dues, until the time provided for its final distribution and settlement.

As the result of this arrangement, when the unpaid member gets his acquittance money, the prepaid member is entitled to the release of his mortgage. The payment of the one and the release of the other, are the simultaneous and resulting effects.

But the complainant also alleges that he is entitled to receive his final share of the assets of the Association.

This is denied by the answer of the respondent, and the proof of the complainant, through the secretary of the company, does not sustain the allegation.

The seventeenth Article provides for the termination of the Association. When each shareholder shall have received for each share his acquittance money, not to exceed

$112, and the members not having drawn their shares, are then entitled to the balance; and all the mortgagors to be released.

In the fifteenth, sixteenth and seventeenth answers of the secretary, to the interrogatories of the complainant, a statement is given as to the extent of the assets.

In his twenty-first answer, the witness furnishes an approximate estimate of the nett balances, which had accrued up to October 27th, 1872, amounting to $10,579.

As we understand it, these are the profits applicable to the liquidation of shares unpaid, under the provisions of the seventeenth Article.

In his first cross-interrogatory, the witness explains, if explanation were necessary, that the amount appearing upon the face of the mortgage affords no definite criterion of the actual amount due thereon. By his answer to the tenth cross-interrogatory he states that there is still due upon the mortgages $14,789, and in his answers to the thirty-eighth, fortieth and forty-first interrogatories, he states that if the amount due on all the outstanding mortgages, excluding Fay's indebtedness, was paid, and added to his estimate of the profits and balances, referred to in his twenty-first answer, amounting to $10,579, and aggregating $25,368.62, that there would be sufficient to furnish each unredeemed member with $112 for each share he might hold—that is, it only requires $17,024 to supply the one hundred and fifty-two unredeemed members with $112 for each share, there can be no doubt the sum would be ample, and leave a margin of $8,344.62.

The testimony of the secretary could not have been otherwise, unless there was some mistake in the figures, if the assumption as to the character of the indebtedness, under the mortgages were true.

Upon this basis, we understand, the appellant's counsel relies, as furnishing the evidence that the Association hae sufficient assets to pay the complainant, and the other

unpaid members, and is therefore in a condition to be dissolved, according to the tenor and effect of the seventeenth Article.

The fallacy consists in treating these mortgage debts as appropriate assets, to be calculated and applied, with the sum from the nett revenues, to the satisfaction of the claims of the unpaid shareholders.

They cannot be used for that purpose. The Association has no authority to collect and apply the indebtedness under the mortgage, to the liquidation of the claims of the unpaid members.

Whilst they exist, and are of binding efficacy, they are only a source of revenue, and as such constitute an efficient part of the available assets of the Association.

The profits, which enable the company to pay the shareholders, also operate to discharge the mortgages.

When the former are paid the latter are released; but the payment of the one, and the release of the other, depend upon the sufficiency of the general revenues and assets.

The surplus of $10,579, referred to, assuming that amount to be correct, is the only available fund applicable to the ultimate payment of the shareholders.

When an adequate amount has been regularly accumulated to satisfy the claims of the deferred shareholders, the complainant and others of like condition will be authorized to have their acquittance money, and to divide the surplus profits—the prepaid members, will then also be released from their mortgages.

When such objects shall have been effected, the Association, having accomplished its mission, terminates.

But, as we have stated, it has not been made to appear, from the testimony adduced, that such time has arrived, and that the Association has sufficient available funds to effect the results indicated.

---

The appellant has not shown himself entitled to relief on this ground, and the decree of the Circuit Court ought to be affirmed.

*Decree affirmed.*

