Mr. Justice James
delivered the opinion of the Court:
The justice holding the special term for Orphans’ Court business has certified to this court the question whether a certain paper writing, purporting to be a codicil to the will of the late Admiral Porter, should be admitted as a.will disposing of real estate. The particular question is, whether that paper was attested by William Wilkes, one of the three persons whose names were subscribed as witnesses.
The proceedings in the Orphans’ Court, relating to proof of the will and codicil, were as follows: Mrs. Edna Campbell, mentioned in those papers as Edna Porter, appeared by her solicitor and demanded full proof of their execution. Thereupon J. M. Alden, Chauncey Thomas and William Wilkes, who were offered as witnesses to the will, testified that, at or about the date thereof, they saw Admiral Porter sign and heard him acknowledge it as his last will and testament, and that thereupon, at his request, they subscribed their names as witnesses. As to the paper purporting to be a codicil, Alden and Thomas testified that, at or about the date thereof, they saw Admiral Porter sign it, and that thereupon, at his request, they signed their names to it as witnesses, and that, when that paper was so signed, Wilkes, whose name appears as one of the witnesses, was not present. Wilkes testified *497 that he was employed as a servant in the testator’s house, that he was summoned by the bell to the room in which the Admiral transacted business; that when he entered it and, during his stay, the Admiral and J. M. Alden, and no other persons, were there; that, on his entrance, Admiral Porter pointed to a paper on the table and said “sign that paper;” that thereupon, witness signed the paper pointed out to him and left the room; that the paper shown to him in court was the paper signed by him; that the signature, “William Wilkes, messenger,” appearing thereon, was his handwriting; that, at the time of his signature, there was no acknowledgment of the nature of the paper, or of the signature of Admiral Porter, and that witness could not say whether such signature was then on the paper.
It was agreed in open court, by counsel for all of the parties, that the paper referred to had in fact been executed by Admiral Porter, and attested by the witnesses, J. M. Alden and Chauncey Thomas, before Wilkes signed it.
The statute of Maryland relating to wills, which is in force in this District, provides as follows:
“All devises and bequests of any lands or tenements, devisable by law, shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed, in the presence of the said testator, by three or more credible witnesses, or else they shall be utterly void and of none effect.” Act of 1798, Ch. 101, subch. 1, section 4.
What is it that this statute requires to be attested? Is it the fact that the testator signed the paper in question; or is it the two facts that he.not only signed that paper but signed it as his will? In examining this question it is proper to refer as well to English as to American authorities, for the provision above cited was copied from section 5, of the statute of Charles II. Ch. 3, commonly known as the Statute of Frauds.
In Wyndham vs. Chetwynd, 1 J. Burr, 414 (1757) Dord Mansfield said: ‘ ‘ This whole clause, which introduces a positive solemnity to be observed, not by thé learned only, but by *498 the unlearned; at a time when they are supposed to be without legal advice; in a matter which greatly interests every proprietor of land; where the direction should be plain to the meanest capacity; is so loose that there is not a single branch of the solemnity defined or described with sufficient accuracy to convey the same idea to the greatest capacity. There have been litigations and contradictory opinions, upon almost every part of the form; as, What is signing by the testator? Whether the witnesses are to attest uno contextu, uno eodemque tempore? Whether they are to see the testator sign? Whether they ought to know that he signs it as his will ? Whether he ought to publish it as his will? A very little precision and a very few words might have prevented all these questions. * * * It has been said that this act of 29 C 2, ch. 3, was drawn by Rd. Ch. J. Hale. But this is scarce, probable. It was not passed till after his death; and it was brought in in the common way, and not upon any reference to the judges.” These observations, especially that this section prescribed solemnities which must be practised by the unlearned, when they are supposed to be without legal advice, are strong arguments that it is not to be construed technically, nor in ways which only the after thought of litigation would suggest.
Rater, in the same case, Rord Mansfield said: “The legislature meant only to guard against fraud by a solemn attestation, which they thought would soon be universally known, and might very easily be complied with. * * * Suppose the subscribing witnesses honest; how little need they know? They do not know the contents; they need not be together; they need not see the testator sign; (if he acknowledge his hand it is sufficient); they need not know it to be a will; if he delivers it as a deed it is sufficient.”
Bond vs. Seawell, 3 Burr, 1773 (A. D. 1765), was a case reserved at nisi prius, and the question was upon the due execution of the will of Sir Thomas Chitty. As to two of the witnesses, it was proved that the testator showed them the codicil and the last sheet of the will (the latter being written by him on two separate sheets); that he then sealed before them both this last sheet of the will and the codicil, took *499 up both of them and delivered them severally as his act and deed for the purposes therein mentioned. A new trial was ordered on account of a question whether the first sheet of the will was, or was not in the room at the time of the attestation. •Meantime Ford Mansfield said: “It is not necessary that the witnesses should attest in the presence of each other, or that the testator should declare the instrument he executed ‘to be his will,' or that the witnesses should attest every page, folio or sheet; or that they should know the contents■; or that each folio, page or sheet should be particularly shown to them.” In conclusion he said: “if the jury shall be of opinion that it (the first leaf of the will) was then in the room, they ought to find for the will generally; and they ought to presume, from the circumstances proved, that the will was in the room.”
It is proper to remark that, in disposing of this case, Ford Mansfield informed the bar that he had had a conference with all of the judges, except Mr. Baron Adams, who was out of town. Although they only suggested certain doubts, it is manifest that he had their concurrence in this view. This case is, therefore, of very weighty authority.
The case most commonly referred to by American courts is White vs. Trustees of British Museum, 6 Bing., 309. We shall state it somewhat at length, because it has been the subject-of conflicting interpretations. That case was heard on a special verdict, which found that the paper in question was in the handwriting of the testator; that two of the witnesses signed it without seeing his signature, and were not informed by him of the nature of the paper, or of the purpose for which' they were requested to sign it; that at a later date a third witness signed the paper, and was at the same time informed by the testator that it was his will.
Tindal, C. J., said: “It has been held, in so many cases, that it must now be taken to be settled law, that it is unnecessary for the testator actually to sign the will in the presence of the three witnesses who subscribe the same; but that any acknowledgment before the witnesses that it is his signature or any declaration that it is his will, is equivalent to an actual signature in their presence, and makes the attestation *500 ' and subscription of the witnesses complete. The objection, therefore, to the execution of the present will, does not rest upon the fact that it was signed by Mr. White in their presence; but that, with respect to two of the witnesses, there was no acknowledgment of his signature nor any declaration that it was his will, but that they signed their names in entire ignorance of the nature of the instrument, or of the obj ect for which their names were written. * * *
“The question, however, appears to us to be: Whether, upon this special verdict, the finding of the jury establishes, although not an acknowledgment in words, yet an acknowledgment in fact, by the devisor to the subscribing witnesses, that the instrument was his will? for if by what the devisor has done, he must, in common understanding and reasonable construction, be taken to have acknowledged the instrument to be his will, we think the attestation of the will must be considered as complete. * * *
“In the execution of wills, as well as that of deeds, the maxim will hold good 1non quod dictum sed quod factum est, inspicitur.’ Now, in the first place, there is no doubt upon the identity of the instrument. The paper in question is the very paper writing which was produced by the testator to the three witnesses. * * * In the next place, it appears from the special verdict, that the devisor was conscious himself that the instrument was his will. For the verdict finds that he was of sound disposing mind, both at the time he signed it himself, and also at the time when the witnesses subscribed their names. But, further, it appears from the inspection of the instrument set out in the special verdict, the signature of the three names could not possibly enure to charge themselves, or any other person, and could not have been done for any other purpose whatever than simply to make them witnesses to the will. And lastly, it appears from the same inspection, that immediately above the names of the witnesses, there was written in the handwriting of the testator, these words: ‘In the presence of us as witnesses thereto, ’ which do amount to a clear and unequivocal indication of the testator’s intention that they should be witnesses to his will.
*501 “When, therefore, we find the testator knew this instrument to be his will-, that he produced it to the three persons and asked them to sign the same; that he intended them to sign it as witnesses; that they subscribed their names in his presence, and returned the same identical instrument to him, we think the testator did acknowledge in fact, though not in words, to the three witnesses that the will was his. For, whatever might have been the donbt upon the true construction of the statute, if the case were res integra, yet as the law is now fully settled, that the testator need not sign his name in the presence of the witnesses, but that a bare acknowledgment of his handwriting is a sufficient signature to make their attestation and subscription good within the statute, though such acknowledgment conveys no intimation whatever, or means of knowledge, either of the nature of the instrument, or the object of the signing; we think the facts of the present case place the testator and the witnesses in the same situation as they stood where such oral acknowledgment of signature has been made, and we do, therefore, upon' the principle of these decisions, hold the execution of the will in question to be good within the statute.”
We have said that this opinion has been the subject of conflicting interpretations. It seems to have been understood by some courts to mean that the testator must, either in words or in effect, acknowledge, not only that the paper in question was his act, but that it was a will. Some expressions in it may, if considered separately, suggest such a meaning; for example, the following: “ The question appears to us to be, whether, upon this special verdict, the finding of the jury establishes, although not an acknowledgment in words, yet an acknowledgment in fact, by the devisor to the subscribing witnesses, that the instrument was his will.” But these words are not to be considered separately; they must be read with the context; and the concluding paragraph of the opinion was to the effect that an acknowledgment of what the testator knew to be his will was such an acknowledgment that it was his will as would satisfy the statute, although it gave no intimation to the witnesses of the nature of the instrument.
*502 In Osborn vs. Cook, 11 Cushing, 532 (535), the Supreme Court of Massachusetts so interpreted White vs. The Trustees. Thomas J., speaking for the court said: 1 ‘In Ilott vs. Genge, 3 Curteis, 118, Sir Herbert Jeaner Fust, referring to the case of White vs. Trustees of British Museum, says: ‘This is a determination that where a testator had written a will himself and signed it, and produces that will so signed (for that is a point not to be lost sight of) to witnesses and desires them to sign their names, that amounts to an acknowledgment that the paper signed by them is his will, and the instrument is complete for its purpose; it is acknowledged by the testator to be his will. It would be more correct to say, the instrument is acknowledged to be his act, which, upon production, is found to be his will.'’ ” It may be added that the doctrine of White vs. The Trustees has .been followed in Massachusetts. In Hogan vs. Grosvenor, 54 Metc., 54 (56), Hubbard, J. said: “His acknowledgment that the instrument is his, with a request that they attest it, is sufficient.” This was said in a case where one of the witnesses had testified that he did not know what the paper was when he signed it at the testator’s request, and only surmised that it was a will. The court observed that “The tendency of the later cases, both in England and this country, has been to give the words of the statute their simple meaning, that signing by witnesses, in the testator’s presence, to a paper acknowledged by him, in some satisfactory manner, to be his, is a sufficient compliance with the terms of the statute.”
In relation to the point in question, the statute of Connecticut is the same as the act of 29 Chas. II. The Supreme Court of that State said, in Canada’s Appeal, 47 Conn., 450 (460): “The charge declares the law to be, that the signature of a testator to a will is not duly attested unless, at the time of attestation, the attesting witness knows that the instrument is a will. This attributes too much meaning to the word ‘attestation; ’ more than has been given to it by courts which have been called upon to define it where used in similar statutes.” 'For a true interpretation of that word, the court referred to Wyndham vs. Chetwynd, supra; Wright vs. *503 Wright, 7 Bing., 457; White vs. Trustees of British Museum, supra, and to Trimmer vs. Jackson, 4 Burn’s Eccl. Law, 102, 3d. Bd.; and remarked that in the latter case “the principle attained its highest development. ’ ’ The attestation was there held sufficient “although the devisor, not content with withholding the truth from the witnesses, concerning the contents or nature of the instrument executed, intentionally misled them by stating it to be a deed.”
The facts in Welty vs Welty, Exr , 8 Md., 15, did not raise the question whether the testator must acknowledge that the paper attested was a will, but we understand the reference of the court to the cases above cited to express approval.
This line-of cases fully justifies the propriety of some general observations of Rord Mansfield in Wyndham vs. Chetwynd. After stating that the legislature meant only to' guard against fraud, and that, in his experience, “many more fair wills have been overturned for want of the form, than fraudulent have been prevented by introducing it,” he said: “For these and many more reasons, it is clear that judges should lean against objections to the formality. They have always done so, in every construction upon the words of the statute; a fortiori ought they to do so if that system would spread a snare, in which many honest wills must be entangled, and be no preservative against fraud.”
We accept as authoritative the line of cases which we have cited. They show that, within the meaning of the statute of 29 Charles II, attestation is properly made, either when the witness has seen the testator sign the instrument, or has heard him, after it has been signed, acknowledge that the act was his. They show also that this acknowledgment may be conveyed either by words or by acts which indicate to the witness that he is called upon to act in the capacity of witness, and to attest something which is treated by the testator as his act. They show, too, that it is not necessary to the effectiveness of this acknowledgment or of the attestation, that the witness should know the nature of the instrument produced and submitted for his attestation. It is pointed out by Chief Justice Tindal, as a significant circumstance, that *504 the paper laid before the witness in White vs. The Trustees bore the testator’s signature and the formula of attestation. The significance of this fact was, not that the witness was thereby enabled to know what kind of instrument he was to attest, but that such fact was consistent only with an intent, on the testator’s part, to acknowledge to the witness what he had done.
All of the essential facts commented upon by Chief Justice Tindal in that case appear in the case before us. The testator laid before the witness, Wilkes, a paper bearing his own signature and the word “witnesses.” This could have but one meaning. He thereby conveyed an acknowledgment that the instrument produced was his act, and along with this acknowledgment, a desire that the witness should be witness to that fact. We are of opinion that the transaction before us complied with every requirement stated in White vs. The Trustees of the British Museum, and therefore was a compliance with the Statute of 29 Charles II, Ch. 3.

We hold that the codicil in question was properly executed and attested as a will devising real property.