500 A.2d 1031

**Bernice CASSON**

v.

**Benjamin SWOGELL, Pers. Rep. of the Estate of Katharine Korbien.**

**No. 24, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 3, 1985.

---

Stanard T. Klinefelter and Cynthia E. Young (Elena Langrill, on brief), Baltimore, for appellant.

Malik J. Tuma (Richard J. Guth, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

McAULIFFE, Judge.

"Publication" when used in the context of the law of wills means a declaration or other manifestation by the testator to a witness that the instrument is his will. We here determine that publication is not required for the valid execution and attestation of a will, but that publication may be shown as an alternative method of proving the proper execution of a will when the testator signed outside the presence of the witnesses.

On February 23, 1983, Katharine Korbien died while a patient at Union Memorial Hospital in Baltimore City. The next day Benjamin Swogell, the decedent's attorney, presented for probate a will executed by Korbien on July 17, 1981, by the terms of which Swogell was named as personal representative and principal beneficiary of the estate. Administrative probate of the will was granted by the Orphans' Court of Baltimore City on the same day.

On May 12, 1983 Bernice Casson, a cousin of the decedent, filed a petition for judicial probate, offering as a later will of the decedent a document dated February 22, 1983 captioned "Power of Attorney" but containing testamentary language and the signatures of witnesses. Casson was named as sole beneficiary in the later will. Swogell filed an opposition to probate of this will, and the matter was heard by the Orphans' Court. That court denied the petition for judicial probate, stating in a memorandum attached to the order that "the Petitioner has been unable to produce credible witnesses sufficient to prove that the deceased knew the contents of or acknowledged the alleged Will." Casson filed a timely notice of appeal to the Circuit Court for Baltimore City and requested a jury trial.

Cross motions for summary judgment were filed in the Circuit Court by Casson and Swogell. After a hearing the court granted Swogell's motion, finding the evidence was not in dispute that one of the witnesses to the later will was unaware the document was a will at the time he signed, and that consequently there had been no valid attestation of the will.

Casson appealed to the Court of Special Appeals, and that court affirmed in an unreported opinion. We granted certiorari, and we shall reverse and remand for trial.

Two versions of the facts surrounding the execution of the document dated February 22, 1983 emerge from the depositions and affidavits. Casson contends that Korbien became dissatisfied with the services of Swogell, and requested that Casson have another attorney prepare a general power of attorney in favor of Casson. Casson states that she had the power of attorney drawn by N. Frank Lanocha, Esquire, and that she delivered the document to Korbien in her hospital room on February 20. The document was not executed at that time, but at Korbien's request was left with her. Casson states that when she returned on February 22, Korbien told her a will had been added to the power of attorney.[1]

The power of attorney consisted of two legal size pages secured by staples at the top. Each page had lined margins, and in the left margin of each there appeared the name and address of Lanocha. At the top of the first page appeared the underlined words "POWER OF ATTORNEY" and there followed on that page the initial text of a general power of attorney in favor of Casson. This text continued onto the second page, beginning approximately two inches below the top of the page and ending seven lines later. There followed a line designated for the signature of Korbien and a jurat to be executed by a notary public.

---

1. Casson did not offer an explanation as to how the bed-ridden Korbien accomplished the addition of the testamentary language to the power of attorney.

The testamentary language that was added to the power of attorney was inserted in the two inch space at the top of the second page. It consists of a single paragraph inserted without regard to the lined margins, and extending from edge to edge of the paper. It is single spaced and entirely in upper case, while the balance of the document is double spaced and is prepared in conventional upper and lower case form.

There is a significant difference between the type used in the production of this paragraph and that used to produce the power of attorney. The added language is as follows:

I KATHERINE KORBIEN N. CHARLES ST BALTO CITY MD MAKE MY LAST WILL IN SOUND MIND AND MEMORY REVOKING ANY AND ALL OTHER WILLS CODICILS TESTAMENTARY INSTRUMENTS DISPOSITIONS MADE BY ME. I WAIVE ALL BONDS I APPOINT MY COUSIN BERNICE CASSON PERSONAL REPRESENTATIVE AT DEATH. POWER OF ATTORNEY IN LIFE. I GIVE HER MY ENTIRE REAL AND PERSONAL PROPERTY AT DEATH. SIGNED SEALED PUBLISHED AND DECLARED BY THE SAID KATHERINE KORBIEN TO BE HER LAST WILL IN THE PRESENCE OF US WHO AT HER REQUEST AND IN HER PRESENCE AND IN THE PRESENCE OF EACH OTHER SUBSCRIBED OUR NAMES HERETO AS WITNESSES.

The jurat, which begins approximately four inches beneath the testamentary language and immediately beneath the signature of Korbien provides:

I HEREBY CERTIFY, That on this 22nd day of Feb., 1983, before me, the subscriber, a Notary Public of the State of Maryland, in and for the City aforesaid, personally appeared KATHERINE KORBEN,[2] to me known, who, after being duly sworn did make oath in due form of law

---

**2.** The decedent's surname was misspelled as Korben throughout the document originally prepared as a power of attorney, but was correctly spelled in the added testamentary language.

that the foregoing Power of Attorney is her act and deed. AND WILL.

The final words "AND WILL" appear to have been added by the same typewriter that was used to insert the testamentary language.

Casson further stated that while visiting Korbien in the hospital on February 22, she was asked by Korbien to bring the document to her from a housecoat. Casson says that when she retrieved the paper she noted the testamentary portion had been added at the top of the second page, and that the entire document had been placed in a blue backing that folded over the top and was fastened to the pages. She said that at about 5:00 p.m. on that date she summoned James N. Cooney, Jr., a hospital administrator, to Korbien's room for the purpose of witnessing the execution of the document. Casson contends that Korbien specifically asked Cooney to notarize the power of attorney and will, and that Cooney read over the entire document before notarizing it. She stated that both she and Cooney were present to observe the execution of the document by Korbien. Casson states that while Cooney was still present in the room, she also witnessed the will by signing "Bernice Casson Middle River Balto Md." immediately following the testamentary language at the top of the second page.

Cooney's version of the execution of the document differs significantly from that of Casson. Although the versions of this incident given by Cooney appear to have been somewhat inconsistent, he has stated under oath that he did not know the document was a will at the time he signed it. He states that he was summoned to Korbien's hospital room on February 22, and following some polite conversation with Korbien he read over the power of attorney and observed Korbien sign it. According to Cooney, the document did not at the time of Korbien's signing contain any language purporting to make it a will, and Korbien at no time referred to it as a will.

The trial judge apparently recognized that there existed a significant dispute between the parties as to whether the document contained any testamentary language when it was executed on February 22, and that the dispute could not be resolved by summary judgment. However, he was persuaded that even if the testamentary language had been present, the execution of the will was invalid because Cooney had testified he did not know the instrument was a will at the time he witnessed it. The decision to grant summary judgment in favor of Swogell was erroneous. If the trial judge were correct in his interpretation of the law, there nevertheless existed a genuine dispute as to whether Cooney knew the instrument was a will at the time he signed it. Casson had testified the testamentary language was present in the instrument at the time it was read by Cooney and that Korbien had told Cooney it was her will as well as a power of attorney. Cooney's testimony to the contrary need not have been accepted by the trier of fact, and this dispute of fact was incapable of resolution by summary judgment. More importantly, the trial judge erred in determining that a witness must know that an instrument is a will in order to validly attest to it. Both Casson and Cooney testified that Korbien had signed the instrument in the presence of Cooney, and under these circumstances Cooney was not required to know the character of the instrument in order to validly attest to it.

■■■■ Whether publication is required for the proper execution of a will depends upon the law of the state involved.[3] A majority of the states do not require publication, and those states requiring publication generally do so by ex-

---

**3.** Maryland Code (1974, 1984 Cum.Supp.) § 4–104 of the Estates and Trusts Article provides that a will executed outside Maryland is properly executed if it is in writing, signed by the testator, and has been executed in conformity with the law of this State or the law of the state where the will was executed or the testator was domiciled.

press mandate of a statute.[4] The Code of this State includes no specific requirement for publication of a will. Section 4–102 provides:

> Except as provided [in the case of a holographic will or a will made outside Maryland], every will shall be (1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator.

Undaunted by the absence of statutory authority, Swogell contends the case law of Maryland has interpreted "attestation" to include a requirement of publication. While we agree that language may be found in previous opinions of this Court that would appear to support his contention, we conclude upon careful analysis of the history and development of the law relating to the execution of wills that publication is not essential to the valid execution of a will in this State.

Our determination that publication of a will is not required follows from an analysis of the development of the law of England and of this State with respect to the execution of wills. Prior to 1540, a party had testamentary power over his personal estate but not over his freehold estate in land. By the enactment of the statute of 32 Hen. VIII, c. 1, 1540, commonly known as the Statute of Wills, a testator was authorized to devise all socage land[5] and two-thirds of that held in military tenure. The statute of 12 Car. II, c. 24, abolished military tenure, and thereafter one could make testamentary disposition of all land. The Statute of Frauds of 1677, 29 Car. II, c. 3, xii, dealt with formalities of wills and testaments. Prior to this statute,

---

**4.** *See generally* T. Atkinson, *Handbook of the Law of Wills,* ch. 7, § 68, at 327–28 (2d ed. 1953); W. Bowe and D. Parker, 2 *Revised Treatise: Page on the Law of Wills* § 19.143, at 269–70 (1960, 1985 Cum.Supp.). *See also* Annot., 71 A.L.R.3rd 879 (1976).

**5.** Socage was a type of tenure in which the tenant held certain lands in consideration of inferior services of husbandry to be performed by him to the land of the fee. *Black's Law Dictionary* 1246 (5th ed. 1979).

oral testaments of personalty were permitted, but § 19 required writing for testaments unless the testator was in his last illness. Section 5 of the Statute of Frauds increased the formalities required for devises of land by providing that they "shall be in writing, and signed by the party so devising the same, and shall be attested and subscribed, in the presence of the said devisor by three or four credible witness." After the American Revolution, England passed the Wills Act of 1837, 7 Wm. IV & I Vict., c. 26, iii, providing that a will must be signed at the end by the testator or some other person in his presence and by his direction and be attested by two witnesses in his presence. *See generally* C. Reed, *Wills and Administration in Maryland* 33–36 (1954); T. Atkinson, *Handbook of the Law of Wills,* ch. 1, § 3 (2d ed. 1953); E. Hinkley, *The Testamentary Law and the Law of Inheritance and Apprentices in Maryland,* ch. 5, at 41 (1878).

Since 1798 the provision requiring witnesses to attest to a will has been part of the statutory law of Maryland. *McGarvey v. McGarvey,* 286 Md. 19, 20, 405 A.2d 250 (1979); *Van Meter v. Van Meter,* 183 Md. 614, 616, 39 A.2d 752 (1944); *Shane v. Wooley,* 138 Md. 75, 77, 113 A.2d 642 (1921). The Act of 1798, ch. 101, sub-ch. 1, sec. 4, tracked section 4 of the English Statute of Frauds, *Van Meter, supra,* 183 Md. at 617, 39 A.2d 752 *Welty v. Welty,* 8 Md. 15, 22 (1855), and provided as follows:

All devises and bequests of any lands or tenements, devisable by law, shall be in writing and signed by the party so devising the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed, in the presence of the said testator, by three or more credible witnesses, or else they shall be utterly void and of none effect.

In a will executed pursuant to the Statute of Frauds, the witness did not have to know the testamentary character of the document. *Johnson v. Johnson,* 1 Cr. & Mees. 140 (1832); *Wright v. Wright,* 7 Bing. 457, 131 Eng.Rep. 177 (1831); *White v. Trustees of The British Museum,* 6 Bing.

310, Eng.Com.Law Reps. xix 91 (1829); *Trimmer v. Jackson,* 4 Burn's Eccl.Law, (7th ed. 1809) 130; *Bond v. Seawell,* 3 Burr. 1773, 97 Eng.Rep. 1092 (1765); *Windham v. Chetwynd,* 1 Burr. 414, 97 Eng.Rep. 377 (1757); 4 *Kent's Commentaries on American Law* 514–515(b) (12 ed. Holmes 1873).

In *Windham v. Chetwynd,* 1 Burr. 421, Lord Mansfield said:

> The legislature meant only to guard against fraud by a solemn attestation, which they thought would soon be universally known, and might very easily be complied with. * * * Suppose the subscribing witnesses honest; how little need they know? They do not know the contents; they need not be together; they need not see the testator sign; (if he acknowledge *his hand,* it is sufficient;) *they need not know it to be a will; (if he delivers it as a deed, it is sufficient.)* (Emphasis added.)

In *Bond v. Seawell,* 3 Burr. 1775, Lord Mansfield reiterated the rule that "[i]t is not necessary that the testator should declare the instrument he executed to be his will." And in *Trimmer v. Jackson,* 4 Burn's Eccl.Law (7th ed. 1809) 130, the testator went so far as to deceive the witnesses that the document was a deed and not a will, and it was adjudged a sufficient execution.[6]

---

**6.** Recognizing that one may be made aware of the testamentary character of an instrument without being made aware of its content, we are nevertheless constrained to reproduce Judge Swinburne's interesting if perhaps conjectural explanation of a testator's desire for secrecy:

> [B]ecause the testator is afraid to offend such persons as do gape for greater bequests than either they have deserved, or the testator is willing to bestow upon them; (lest they peradventure, understanding thereof, would not suffer him to live in quiet) or else because he should overmuch encourage others, to whom he meant to be more beneficial than they expected, (and so give them occasion to be more negligent husbands or stewards about their own affairs, than otherwise they would have been, if they had not expected such a benefit at the testator's hands) or for some other considerations. *Swinburne on Wills,* Part I § XI, at 84–85 (7th ed. 1803).

In a leading English case, *White v. Trustees of the British Museum, supra,* a will was held to have been sufficiently attested when subscribed by three witnesses in the presence and at the request of the testator, although none of the witnesses saw the testator's signature, and only one of them knew the character of the instrument. Chief Justice Tindal declared:

When, therefore, we find the testator knew this instrument to be his will; that he produced it to the three persons and asked them to sign the same; that he intended them to sign it as witnesses; that they subscribed their names in his presence, and returned the same identical instrument to him; we think the testator did acknowledge in fact, though not in words, to the three witnesses, that the will was his. For, whatever might have been the doubt upon the true construction of the statute, if the case was *res integra,* yet as the law is now fully settled, that the testator need not sign his name in the presence of the witnesses, but that a bare acknowledgment of his handwriting is a sufficient signature to make their attestation and subscription good within the statute, *though such acknowledgment conveys no intimation whatever, or means of knowledge, either of the nature of the instrument, or the object of the signing....* 6 Bing. at 320 (emphasis added).

In *Ilott v. Genge,* 3 Curteis at 181, Sir Herbert Jenner Fust said:

[I]t has been held, that a request to witnesses to subscribe their names as witnesses, without stating what the instrument was, was a sufficient acknowledgment under the Statute of Frauds. *The Trustees of the British Museum v. White, Wright v. Wright, Johnson v. Johnson, Jarman on Wills* [Vol. I, pp. 71, 73]. (Footnotes omitted).

The Massachusetts Supreme Judicial Court, in *Osborn v. Cook,* 65 Mass. 532, 535 (1853), commented upon *Ilott v. Genge* and *White v. Trustees of the British Museum* as follows:

In *Ilott v. Genge,* 3 Curteis, 181, Sir Herbert Jenner Fust, referring to the case of *White v. Trustees of British Museum,* says: "This is a determination, that where a testator had written a will himself and signed it, and produces that will, so signed, (for that is a point never to be lost sight of,) to witnesses, and desires them to sign their names, that amounts to an acknowledgment that the paper signed by them is his will, and the instrument is complete for its purpose; it is acknowledged by the testator to be his will." It would be more exact to say, the instrument is acknowledged to be his act, which, upon production, is found to be his will.

In an early Maryland case, *Welty v. Welty,* 8 Md. 15 (1855), the Court did not specifically address the issue of whether the testator must acknowledge that the paper attested was a will, but did cite with approval certain of the English cases discussed in *Ilott v. Genge, supra.* The *Welty* court declared:

The cases cited by the appellants' counsel from *7 Eng. Eccl.,* are decisions upon the statute of *I Vic. ch. 26,* which differs materially from that of Charles II. But speaking of decisions under the last named statute, on pages 416 and 417 of *7 Eccl.Rep.,* Sir Herbert Jenner Fust says: "It was held not necessary that the witnesses should see the testator actually sign; he need not acknowledge his signature to all the witnesses at the same time, the acknowledgment might be made to each witness separately; a simultaneous presence of the witnesses was not required." He then refers to several cases as having determined that an acknowledgment in the presence of each witness separately is sufficient. *Other cases are cited by him as showing that a request to witnesses to subscribe their names as witnesses, without stating what the instrument was, was a sufficient acknowledgment under the statute of Charles.* And again he says, on page 417: "Under the statute of frauds it was sufficient if the paper was acknowledged to be a will, but it is now enacted in express terms that the signature shall be

acknowledged, it would seem to require that the witnesses should see the signature; that they should know that the paper was signed at the time, a fact which could only be known by seeing the testator sign, or by hearing him say that he had signed, and that was his signature." 8 Md. at 22–23 (emphasis added).

In the case of *In re Porter*, 20 D.C. (9 Mackey) 493 (1892), *rev'd on other grounds, Campbell v. Porter*, 162 U.S. 478, 16 S.Ct. 871, 40 L.Ed. 1044 (1896), the Supreme Court of the District of Columbia addressed the question of whether a will must be published. Because Chapter 101 of the 1798 Laws of Maryland, to which we have earlier referred, formed a part of the common law of the District of Columbia at that time, the court traced the history of the statute and concluded:

[The English cases] show that, within the meaning of the statute of 29 Charles II, attestation is properly made, either when the witness has seen the testator sign the instrument, or has heard him, after it has been signed, acknowledge that the act was his. They show also that this acknowledgment may be conveyed either by words or by acts which indicate to the witness that he is called upon to act in the capacity of witness, and to attest something which is treated by the testator as his act. *They show, too, that it is not necessary to the effectiveness of this acknowledgment or of the attestation, that the witness should know the nature of the instrument produced and submitted for his attestation.* 20 D.C. at 503 (emphasis added).

Swogell claims the standard requiring publication was set in Maryland in *Conrades v. Heller*, 119 Md. 448, 87 A. 28 (1913) and reaffirmed in *Woodstock College v. Hankey*, 129 Md. 675, 99 A. 962 (1917). We are not persuaded that the Court in these cases intended to change the long-settled English rule that a will need not be published.

In *Conrades, supra*, evidence was proffered that the testator signed the document in the presence of the witness-

es, but may not have asked the witness to sign, or said the document was her will. The Court said:

> But without doing more than citing them such cases as *Welty v. Welty,* 8 Md. 15; *Etchison v. Etchison,* 53 Md. [348] 357 [ (1880) ]; *Moale v. Cutting,* 59 Md. 510, and *Gross v. Burneston,* 91 Md. 383 [46 A. 993], show that there can be no question in this case about the execution of the will being in accordance with the laws of this State. It is not necessary that a testator *ask* the witnesses to sign, *Gross v. Burneston, supra,* and as to whether he requested the witnesses to sign his will, or sufficiently declared it to be his will, it is sufficient if he by word, act, sign or conduct, makes it certain that he intends the paper which he is about to sign to be his will and desires the witnesses to sign it as such. 40 Cyc. 1115–1117. 119 Md. at 461, 87 A. 28.

The Court's reliance on *Welty, supra, Moale v. Cutting,* 59 Md. 510 (1883), and *Gross v. Burneston,* 91 Md. 383, 46 A. 993 (1900), is evidence that it intended to follow the English rule because all three cases cite with approval *White v. Trustees of the British Museum, supra.* To the extent *Conrades* implies that a testator must declare the instrument a will, or by word, act, sign or conduct convey that knowledge to the witness, it is disapproved.

To fulfill the requirement that a testator request a witness sign a document it is not necessary that the witness know it is a will. We have held that the testator need not formally ask the witness to sign the paper, his implied assent being sufficient. *Greenhawk v. Quimby,* 170 Md. 280, 287–88, 184 A.2d 485 (1936); *Gross v. Burneston,* 91 Md. 383, 386–87, 46 A. 993 (1900); *Higgins v. Carlton,* 38 Md. 115, 141 (1868). In *Gross,* Chief Judge McSherry said:

> That the testator must in some way request the subscriber witnesses to attest the will is obviously involved in this requirement. The validity of the will is made to depend upon the instrument being attested by two or more credible witnesses; and it cannot well be perceived how it could be attested at all, unless the testator directly or

indirectly requested those persons who do attest it to subscribe their names to it as witnesses.  The law throws around testamentary papers the utmost precautions to prevent fraud and imposition, and it would seriously weaken these safeguards if it were held that no request at all, or in any form, by the testator to the subscribing witnesses, were needed.  But it is not meant by this that the testator should ask the witnesses to sign, because facts which are sufficient in law to constitute a legal request on his part are all that must be proved.  91 Md. at 386–87, 46 A. 993.

Here there is no dispute that the day preceding her death Korbien asked Cooney to sign the instrument, and a challenge to the will on that ground cannot be successful.

Confusion over whether publication is required in Maryland appears to have arisen in the application of a related rule.  We refer to the rule that a testator may sign his will out of the presence of the witnesses if he acknowledges his signature or declares the document to be his will.  2 *Blackstone's Commentaries* *377 (1844); *Kent's Commentaries, supra,* 515–16; I *Jarman's Treatise on Wills* § 73 (1st ed. 1945).  *See also White v. Trustees of the British Museum, supra.*

In *Moale v. Cutting, supra,* 59 Md. at 519, this Court recognized the acknowledgment rule as applied in English decisions.

[A]lthough it appears the testator did not sign the will in the presence of all at once, and the witnesses did not, in fact, write their names, all at one and the same time, yet the testator acknowledged his signature and declared it his will to all at once, and those who had before written their names as witnesses, then and there re-affirmed the same.  What we have said respecting the will is also true respecting the codicil. . . .  We think both will and codicil effectively executed and attested in accordance with the requirements of law.  *White v. British Museum,* 6 Bing. 310, I Jarman on Wills, 213; *Welty v. Welty,* 8 Md. 15; *Etchison v. Etchison,* 53 Md. 357.

The same rule was later applied in *Woodstock College v. Hankey, supra,* 129 Md. at 680–81. The *Woodstock* Court said:

> It is, of course, essential to the attestation, if the instrument was signed by the testator out of the presence of one or more of the witnesses, that he should in some way acknowledge it to them as his act. The attestation should also be made at the testator's request, express or implied. It is not, however, necessary that the testator should verbally declare the instrument to be his will, if his conduct, or the paper itself, apprises the witnesses of that fact—*Conrades v. Heller, Etchison v. Etchison, supra;* nor is it requisite that he should formally ask them to sign and attest the paper, his implied assent being sufficient. *Gross v. Burneston,* 91 Md. 387 [46 A. 993]; *Robinson v. Jones, supra; Higgins v. Carlton,* 28 Md. 140; *Brengle v. Tucker,* 114 Md. [597] 602 [80 A. 224].

The acknowledgment rule applies only when the testator has signed the instrument out of the presence of the witnesses. In the present case Korbien signed the document while both witnesses were present, and consequently there was no requirement that she declare the instrument to be her will or acknowledge her signature.

The very existence of a rule permitting publication as an alternative method of satisfying the requirement of attestation where the testator signs out of the presence of the witness stands as proof that the law of this State does not generally require publication of the will.

Our determination that attestation properly may be made without the witness knowing the nature of the instrument is in accord with the holdings of a majority of jurisdictions that trace their statute on wills to the Statute of Frauds. *See Atkinson's Law of Wills,* § 68, at 327; W. Bowe and D. Parker, 2 *Revised Treatise: Page on the Law of Wills* § 19.143, at 270 (1960, 1985 Cum.Supp.); 4 *Kent's Com-*

*mentaries on American Law* 514–15. *See also Annot.,* 71 A.L.R.3d 879 (1976).

■ Swogell raises two additional issues that we will consider for the guidance of the trial court. First, he contends the document in question cannot be admitted to probate either because it is captioned a "Power of Attorney" or because it impermissibly combines two legal documents into one. In *Carney, Adm'r v. Kosko,* 229 Md. 112, 117, 182 A.2d 28 (1962), we said that a will or codicil need not be in any particular form, so long as it makes a disposition of the testator's property that is to take effect only upon death. The testamentary provisions found within this instrument clearly comply with these requirements, and this issue is without merit.

■ Finally, Swogell argues that the will is invalid because the signatures of both witnesses do not appear at the end of the will, and do not appear in close proximity to one another at any particular place on the document. Section 4–102 of the Estates and Trusts Article does not require the witnesses to sign together, or at any particular place on the will. This Court dealt with a similar issue in *Shane v. Wooley,* 138 Md. 75, 78, 113 A. 652 (1921), where we said:

> While there is no provision of the statute of this State which requires in terms that the attestation clause and the signatures of the witnesses shall be at the end of the will or at any particular place of the will, as in some of the States of the Union, the weight of authority, however, appears to be that the witnesses must sign, either upon the same sheet as the signature of the testator, or on some sheet physically connected with it, to constitute a valid will.

While the fact that the two witnesses did not sign in the same place may bear on the jury question of whether the will is a fraud, it does not constitute a fatal variance from the required procedure for lawful execution.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT

WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND FOR TRIAL; COSTS TO BE PAID BY APPELLEE.